UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

WILLIAM "JACK" BAXTER, ET AL.      )
      )
      )
      Plaintiffs,      )
      )
      v.      )      Civil Action No. 11- 2133 (RCL)
      )
ISLAMIC REPUBLIC OF IRAN, ET AL.      )
      )
      Defendants.      )
_____)

**PLAINTIFFS' MEMORANDUM OF LAW WITH POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFSs RENEWED MOTION FOR  ENTRY OF DEFAULT JUDGMENT AS TO LIABILITY AS TO ALL DEFENDANTS**

Dated: January 31, 2017

Respectfully submitted,

HEIDEMAN NUDELMAN
& KALIK, P.C.
1146 19th Street, N.W., 5th Floor
Washington, DC 20036
Telephone:  202-463-1818
Telefax:  202-463-2999

By: _/s/Richard D. Heideman_____
    _/s/ Tracy Reichman Kalik_____

Richard D. Heideman (No. 377462)
Noel J. Nudelman (No. 449969)
Tracy Reichman Kalik (No. 462055)

PERLES LAW FIRM, P.C
Steven R. Perles (No. 326975)
Edward MacAllister (No. 494558)
1050 Connecticut Avenue, N.W., 10th Floor
Washington, DC 20036
Telephone:  202-955-9055
Telefax:  202-955-3806

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION………………………………………………………………………………..1

PROCEDURAL BACKGROUND…………………………………………………………....3

ARGUMENT………………………………………………………………………………...5

I.  Most of the FSIA Requirements For Liability Under 28 U.S.C. § 1608(e)
    Are Easily Met ………………………………………………………….....................5

II. Hamas' Responsibility for the Eleven Terrorist Attacks Which Are Before This Court
    Has Been Established by a Prior Judicial Decision and by Additional Evidence Procured By
    Plaintiffs………………………………………………………………………………..7

    A.  Evidence and Expert Testimony Establish that Hamas is the Responsible Terrorist
        Organization for Committing these Eleven Attacks……………………………………………7

    B.  Under Fed. R. Evid. 201, this Court can take judicial notice of previously-rendered
        conclusions of facts and law that establish Hamas's liability for acts of terrorism……….11

        1.  Under Fed. R. Evid. 201, this Court may judicially notice findings of fact and
            conclusions of law, including those in judicial records………………………………11

        2.  This Court may render a liability judgment against FSIA defendants either by
            reviewing evidence considered in an opinion that is judicially noticed, or by
            adopting previous findings of fact and conclusions of law…………………………13

        3.  Plaintiffs in this matter are the same individuals who proved they were injured by
            Hamas in the *Arab Bank* case; this Court should take judicial notice of Hamas's
            responsibility for the attacks that caused their injuries in this case as well…………..16

III. The Islamic Republic Of Iran Is Liable For Supporting Hamas…………………………17

    A.  Iran Provided Hamas with Logistical and Financial Support to Enable it to Commit the
        Terrorist Attacks which Injured or Killed These Plaintiffs………………………………...17

    B.  Under Fed. R. Evid. 201, This Court Should Take Judicial Notice of the Numerous
        Decisions Finding that Iran Materially Supported Hamas in its Execution Of Acts Of
        Terrorism……………………………………………………………………………………22

IV. Syria Is Liable As State Sponsor Of Hamas……………………………………………...29

    A.  Syria Provided Safehaven, Material Support, to Hamas Leadership………………………31

i

## TABLE OF CONTENTS CONT'D

Page

   B.   The Syrian Defendants provided Operational and Financial Support to Hamas…………...33

V.  Default Judgment May Be Properly Entered By This Court Against The Iranian Defendants and
      Syrian Defendants As Plaintiffs Have Met Their Burden Of Proof……………………………...35

VI.  Once A Finding Of Liability Has Been Made, Plaintiffs Request The Court Consider Appointing
      A Special Master To Assist The Court In Assessing The Plaintiffs' Damages…………..……...36

   CONCLUSION……………………………………………………………………………37

# TABLE OF AUTHORITIES

Page

Cases

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
  528 F.3d 934 (D.C. Cir. 2008) ............................................................................. 5
*Anderson v. The Islamic Republic of Iran*,
  753 F. Supp. 2d 68 (D.D.C. 2010) ..................................................................... 12
*Baker v. Socialist People's Libyan Arab Jamahiriya*,
  775 F. Supp. 2d 48 (D.D.C. 2011) ..................................................................... 12
*Beer v. Islamic Republic of Iran*,
  574 F. Supp. 2d 1 (D.D.C. 2008) ................................................................. 24, 25
*Beer v. Islamic Republic of Iran*,
  2010 U.S. Dist. LEXIS 129953, (D.D.C 2010) ............................................. 15, 23
*Ben-Rafael v. Islamic Republic of Iran*,
  540 F. Supp. 2d 39 (D.D.C. 2008) ................................................................. 14, 15
*Ben-Rafael v. Islamic Republic of Iran*,
  718 F. Supp. 2d 25 (D.D.C. 2010) ............................................................ 12, 15, 17
*Bennett v. Islamic Republic of Iran*, ,
  507 F. Supp. 2d 117 (D.D.C. 2007) ............................................................... 24, 25
*Bluth v. Islamic Republic of Iran*,
  No. CV 12-250 (GK), 2016 WL 4491760 (D.D.C. Aug. 25, 2016) ........... 15, 18, 27
*Bodoff v. Islamic Republic of Iran*,
  907 F. Supp. 2d 93 (D.D.C. 2012) ..................................................................... 15
*Bodoff v. Islamic Republic of Iran*,
  424 F. Supp. 2d 74 (D.D.C. 2006) ..................................................................... 25
*Boim v. Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008) ............................................................................. 19
*Booth v. Fletcher*,
  101 F.2d 676 (D.C. Cir. 1938) ..................................................................... 11, 13
*Brewer v. Islamic Republic of Iran*,
  664 F. Supp. 2d 43 (D.D.C. 2009) ....................................................... 12, 14, 15, 28
*Campuzano v. Islamic Republic of Iran*,
  281 F. Supp. 2d 258 (D.D.C. 2003) ............................................................... 15, 26
*Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*,
  811 F. Supp. 2d 53 (D.D.C. 2011) ..................................................................... 12
*Commercial Bank of Kuwait v. Rafidain Bank*,
  15 F.3d 238 (2d Cir. 1994) ............................................................................. 3, 35
*Dammarell v. Islamic Republic of Iran*,
  404 F. Supp. 2d 261 (D.D.C. 2005) ................................................................... 14
*Eisenfeld v. Islamic Republic of Iran*,
  172 F. Supp. 2d 1 (D.D.C. 2000) ....................................................................... 27
*Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*,
  510 F. Supp. 2d 101 (D.D.C. 2007) ..................................................................... 3

*Estate of Botvin v. Islamic Republic of Iran,*
  873 F. Supp. 2d 232 (D.D.C. 2012) ................................................................. passim
*Estate of Brown v. Islamic Republic of Iran,*
  872 F. Supp. 2d 37 (D.D.C. 2012) ........................................................... 12, 14, 16
*Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya,*
  No. CIV.A. 06-727 JMF, 2013 WL 351610 (D.D.C. Jan. 29, 2013) ........................ 12
*Estate of Doe v. Islamic Republic of Iran,*
  808 F. Supp. 2d 1 (D.D.C. 2011) ...................................................................... 12
*Estate of Heiser v. Islamic Republic of Iran,*
  466 F. Supp. 2d 229 (D.D.C. 2006) ............................................................. 12, 14
*Fain v. Islamic Republic of Iran,*
  856 F. Supp. 2d 109 (D.D.C. 2012) .................................................................. 12
*Flanagan v. Islamic Rep. of Iran,*
  2016 U.S. Dist. LEXIS 72331, (D.D.C. June 3, 2016) ......................................... 34
*Goldberg-Botvin v. Islamic Republic of Iran,*
  938 F. Supp. 2d 1 (D.D.C. 2013) ................................................................ 22, 23
*Greenbaum v. Islamic Republic of Iran,*
  451 F. Supp. 2d 90 (D.D.C. 2006) .............................................................. 15, 26
*Haim v. Islamic Republic of Iran,*
  784 F. Supp. 2d 1 (D.D.C. 2011) ...................................................................... 12
*Han Kim v. Democratic People's Republic of Korea,*
  774 F.3d 1044 (D.C. Cir. 2014) ....................................................................... 35
*Harrison v. Republic of Sudan,*
  882 F. Supp. 2d 23 (D.D.C. 2012) .................................................................... 28
*Holder v. Humanitarian Law Project,*
  561 U.S. 1, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) ..................................... 7, 8
*Hussain v. Mukasey,*
  518 F.3d 534 (7th Cir. 2008) ........................................................................... 19
*Kilburn v. Socialist People's Libyan Arab Jamahiriya,*
  376 F.3d 1123 (D.C. Cir. 2004) ....................................................................... 34
*Kirschenbaum v. Islamic Republic of Iran,*
  572 F. Supp. 2d 200 (D.D.C. 2008) .................................................................. 24
*Linde v. Arab Bank, PLC,*
  97 F. Supp. 3d 287 (E.D.N.Y. 2015) .......................................................... passim
*Moradi v. Islamic Republic of Iran,*
  77 F. Supp. 3d 57 (D.D.C. 2015) ................................................................ 18, 19
*Mousa v. Islamic Republic of Iran,*
  238 F. Supp. 2d 1 (D.D.C. 2001) ..................................................................... 27
*Murphy v. Islamic Republic of Iran,*
  740 F. Supp. 2d 51 (D.D.C. 2010) ............................................................. passim
*Opati v. Republic of Sudan,*
  60 F. Supp. 3d 68 (D.D.C. 2014) ........................................................... 11, 12, 13
*Oveissi v. Islamic Republic of Iran,*
  768 F. Supp. 2d 1 (D.D.C. 2010) ........................................................... 12, 14, 19
*Oveissi v. Islamic Republic of Iran,*
  879 F. Supp. 2d 44 (D.D.C. 2012) .............................................................. 12, 13

*Owens v. Republic of Sudan*,
  412 F. Supp. 2d 99 (D.D.C. 2006) ................................................................. 30
*Owens v. Republic of Sudan*, CA 08-1361, (JDB),
  2016 U.S. Dist. LEXIS 37464, (D.D.C. 2016) ........................................... 5
*Paroline v. United States*,
  134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014) .............................................. 34
*Peterson v. Islamic Republic of Iran*,
  264 F. Supp. 2d 46 (D.D.C. 2003) ..................................................... 16, 17
*Prevatt v. Islamic Republic of Iran*,
  421 F. Supp. 2d 152 (D.D.C. 2006) ......................................................... 12
*Rimkus v. Islamic Republic of Iran*,
  750 F. Supp. 2d 163 (D.D.C. 2010) ......................................................... 13
*Roth v. Islamic Republic of Iran*,
  2015 U.S. Dist. LEXIS 9390, (D.D.C. Jan. 27, 2015) ..................... 2, 15, 22
*Singh-Kaur v. Ashcroft*,
  385 F.3d 293 (3d Cir. 2004) ............................................................ 19, 21
*Sisso v. Islamic Republic of Iran*, ,
  2007 U.S. Dist. LEXIS 48526, (D.D.C. July 5, 2007) ............................. 25
*Spencer v. Islamic Republic of Iran*,
  922 F. Supp. 2d 108 (D.D.C. 2013) ......................................................... 12
*Stern v. Islamic Republic of Iran*,
  271 F. Supp. 2d 286 (D.D.C. 2003) ......................................................... 26
*Taylor v. Islamic Republic of Iran*,
  811 F. Supp. 2d 1 (D.D.C. 2011) ..................................................... passim
*United States v. Damrah*,
  412 F.3d 618 (6th Cir. 2005) ................................................................... 7
*United States v. Lang*,
  589 F.2d 92 (2d Cir. 1978) ..................................................................... 11
*United States v. Saget*,
  377 F.3d 223 (2d Cir. 2004) ................................................................... 11
*Valencia v. Islamic Republic of Iran*,
  774 F. Supp. 2d 1 (D.D.C. 2010) ........................................................... 12
*Valore v. Islamic Republic of Iran*,
  700 F. Supp. 2d 52 (D.D.C. 2010) .................................................... 12, 13
*Wachsman ex rel. Wachsman v. Islamic Republic of Iran*,
  603 F. Supp. 2d 148 (D.D.C. 2009) ......................................................... 23
*Wagner v. Islamic Republic of Iran*,
  172 F. Supp. 2d 128 (D.D.C. 2001) ......................................................... 14
*Weinstein v. Islamic Republic of Iran*,
  184 F. Supp. 2d 13 (D.D.C. 2002) ..................................................... 3, 27
*Welch v. Islamic Republic of Iran*, No. 01-863,
  2007 U.S. Dist. LEXIS 99191 (D.D.C. Sept. 20, 2007) ......................... 14
*Wultz v. Islamic Republic of Iran*,
  864 F. Supp. 2d 24 (D.D.C. 2012) ......................................................... 12

Statutes

18 U.S.C. § 2339A ................................................................................................ 8, 29, 30
18 U.S.C. § 2339B ................................................................................................ 7, 8, 30
22 U.S.C. § 2371 .................................................................................................. 18, 30
22 U.S.C. § 2780 .................................................................................................. 18, 31
28 U.S.C. § 1605(a)(7) ........................................................................................ 30
28 U.S.C. § 1605A ............................................................................................... passim
28 U.S.C. § 1608 ................................................................................................. passim
50 U.S.C. § 1701, 1702 ....................................................................................... 8
50 U.S.C. § 4605(j) .............................................................................................. 18, 30
8 U.S.C. § 1189 ................................................................................................... 8

Rules

Fed. R. Civ. P. 50 ................................................................................................ 10, 16
Fed. R. Evid. 201 ................................................................................................ passim

Regulations

31 C.F.R. § 596.201 (2005) ................................................................................ 31

Other Authorities

29 Am. Jur. 2d Evidence § 151 ........................................................................... 11, 17
69 Fed. Reg. 28,098 (2004) ................................................................................ 31
Prohibiting Transactions With Terrorists Who Threaten To Disrupt the Middle East Peace
    Process,
    60 FR 5079, (Jan. 23, 1995) .......................................................................... 8

## INTRODUCTION

Between December 1, 2001 and September 24, 2004, Hamas carried out eleven terrorist attacks that resulted in the injury and/or death of all plaintiffs in this case. Hamas' responsibility for these attacks was proven at trial in the United States District Court for the Eastern District of New York, *Linde, et al v. Arab Bank, PLC*, 04-cv-2799 (BMC) (VVP) (hereinafter "*Arab Bank*") under the Federal Rules of Evidence.[1] Plaintiffs, by and through their undersigned counsel, respectfully move this Court to (1) make independent findings of fact and conclusions of law that Hamas is liable for the eleven attacks which murdered or injured the Plaintiffs; (2) find that pursuant to Fed. R. Evid. 201 it may take judicial notice and adopt specified parts of the U.S. District Court for the Eastern District of New York's April 8, 2015 Memorandum Opinion and Order entered in the *Arab Bank* case regarding the liability of Hamas for nine of the very same attacks that resulted in the wrongful death and injury of Plaintiffs in this case; (3) make independent findings of fact and conclusions of law that the Islamic Republic of Iran and Iranian Ministry of Information and Security (MOIS) (hereinafter "Iranian Defendants") provided

---

[1]All Plaintiffs in this case also filed a lawsuit, *Litle v. Arab Bank*, 04-CV-5449 (NG) (VVP), against the Arab Bank, PLC for, *inter alia*, its material support of Hamas during the Second Intifada. *Compare* Compl., *Baxter v. Islamic Republic of Iran*, 11-cv-2133 (RCL) (D.D.C. Nov. 11, 2011), ECF No. 1 *and* Am. Compl., *Litle v. Arab Bank*, 04-cv-5449 (BMC) (E.D.N.Y. Dec. 18, 2006), ECF No. 243. The *Litle* case was consolidated for purposes of trial with the following cases: *Courtney Linde, et al. v. Arab Bank, PLC*, 04-CV-2799; *Oran Almog, et al. v. Arab Bank, PLC*, 04-CV-5564; *Robert L. Coulter, Sr., et al. v. Arab Bank, PLC*, 05-CV-365; *Gila Afriat-Kurtzer, et al. v. Arab Bank, PLC*, 05-CV-388; *Michael Bennett, et al. v. Arab Bank, PLC*, 05-CV-3183; *Arnold Roth, et al. v. Arab Bank, PLC*, 05-CV-03738; *Stewart Weiss, et al. v. Arab Bank, PLC*, 06-CV-1623. The consolidated action is known as *Linde v Arab Bank*. Plaintiffs filed this case because Iran and Syria are also by their conduct, and should accordingly be held, jointly and severally liable for the murders and injuries at issue. In *Arab Bank*, the court heard testimony and evidence regarding 24 separate attacks committed by Hamas from 2001 to 2004. Plaintiffs in this action were injured or killed in eleven of the attacks which were tried in *Arab Bank* before a jury, which found Hamas liable for committing all 24 attacks. Verdict Form, *Linde v. Arab Bank*, 04-cv-2799 (BMC) (E.D.N.Y. Sept. 22, 2014), ECF No. 1099. The defendant subsequently filed a Rule 50 post trial motion to overturn this finding, but the court upheld the jury verdict for 22 of the 24 attacks. *Linde v. Arab Bank, PLC*, 2015 U.S. Dist. LEXIS 45903, at *135-38 (E.D.N.Y. Apr. 8, 2015). With regard to the liability verdict that was overturned as to two attacks, the January 29, 2004 suicide bombing of Bus No. 19 and the September 24, 2004 mortar attack on Neve Dekelim, the *Linde* court ruled that Hamas's liability had not been fully proven by the *Arab Bank* plaintiffs. However, for the reasons described below in FN 15, Plaintiffs respectfully request that this Court find that Hamas, which has publicly taken responsibility for these attacks, should in fact be held liable for the January 29, 2004 suicide bombing of Bus No. 19 and the September 24, 2004 mortar attack on Neve Dekelim.

material  support and sponsorship to Hamas during the relevant time period which carried out the

eleven terrorist attacks; (4) adopt the findings of fact and conclusions of law in the court's July 3,

2012 Findings of Fact and Conclusions of Law entered in the related cases of *Estate of Botvin v.*

*Islamic Republic of Iran*, 873 F. Supp. 2d 232, 237–38 (D.D.C. 2012) and *Roth v. Islamic*

*Republic of Iran*, 2015 U.S. Dist. LEXIS 9390, at *8 (D.D.C. Jan. 27, 2015)—as well as

numerous other decisions handed down by this court regarding Iran's providing material support

for Hamas during the same time period as to the liability of the Iranian Defendants for their past

and continuing support for its role in providing material support to and sponsorship of Hamas;

(5) make independent findings of fact and conclusions of law that, in addition to the material

support that the Iranian Defendants provided to Hamas in furthering the eleven attacks at issue,

that the Syrian Arab Republic and Syrian Air Force Intelligence (collectively "Syrian

Defendants") also provided independent material support to Hamas which furthered the eleven

attacks at issue; (6) enter Default Judgment against the Iranian Defendants and the Syrian

Defendants as to liability on behalf of all Plaintiffs  pursuant to the private cause of action found

in 28 U.S.C. § 1605A(c); and (7) proceed with the appointment of a special master(s) for the

submission of damages evidence in support of the Judgment to be entered jointly and severally

against the Iranian Defendants and the Syrian Defendants.

28 U.S.C. § 1608(e) provides that "no judgment by default shall be entered by a court of

the United States or of a State against a foreign state, a political subdivision thereof, or an agency

or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by

evidence satisfactory to the court."  To satisfy this burden, plaintiffs must present evidence

concerning their backgrounds and injuries suffered, and also that the Court take judicial notice of

prior findings of fact and evidence.  *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 6–7

(D.D.C. 2011). This allows courts to "rely upon the evidence presented in earlier litigation ... without necessitating the formality of having that evidence reproduced." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 55 (D.D.C. 2010). 28 U.S.C. § 1608(e) does not require any more evidence or higher standard of evidence than the Court would ordinarily receive to render a judgment. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994). To evaluate the Plaintiffs' proof the Court can "accept as true the plaintiffs' uncontroverted evidence." *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 510 F. Supp. 2d 101, 103 (D.D.C. 2007). Moreover, the plaintiffs may establish their proof by affidavit. *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002). Accordingly, Plaintiffs submit the sworn Declarations of Expert Dr. Matthew Levitt and Expert David Schenker in further support of their Renewed Motion for Default Judgment.

## PROCEDURAL BACKGROUND

The Iranian Defendants were served on September 16, 2012 with the Complaint, Summons, Notice of Suit, and administrative documents, together with a copy of each translated into Farsi, by diplomatic means pursuant to 28 U.S.C. § 1608(a)(4). *See* D.E. 15. Having been served, and the Iranian Defendants having failed to answer, Plaintiffs requested that the Clerk of the Court enter default judgment against these defendants. *See* D.E. 24. On July 14, 2015, the Clerk of Court entered default against the Iranian Defendants. *See* D.E. 26.

The Syrian Defendants were served on October 16, 2014 by being served with a copy of the Summons, Complaint, Notice of Suit, and administrative documents, together with a copy of each translated into Arabic, via DHL delivery. Waybill 9040724350 issued by the Clerk of this Court was delivered to the Syrian Defendants in Damascus, Syria on October 16, 2014. The documents were accepted and signed for at the Syrian Ministry of Foreign Affairs. Having been

3

served, and the Syrian Defendants having failed to answer, Plaintiffs requested that the Clerk of the Court enter default judgment against these defendants. *See* D.E. 24. On May 11, 2015, the Clerk of Court entered default against the Syrian Defendants. *See* D.E. 25.

On August 31, 2015, Plaintiffs, except for Erik Schecter, Tiferet Tratner, and Shlomo Tratner, moved for default judgment as to liability only as to the Iranian Defendants. In their motion, Plaintiffs presented evidence and requested that the Court take judicial notice of the jury findings in the matter of *Linde v. Arab Bank, PLC* 97 F. Supp. 3d 287 (E.D.N.Y. 2015) that Hamas was responsible for committing nine of the eleven attacks at issue in this case. D.E. 28. Plaintiffs did not move for default judgment as to the Syrian Defendants at that time, but indicated to the Court that they would do so in a separate pleading. *Id.* On March 31, 2016 this Court denied Plaintiffs' motion *without* prejudice. D.E. 29. In its Order, the Court indicated that while it may "take judicial notice of the evidence in *Linde* demonstrating that Hamas carried out these attacks", Plaintiffs needed to present the Court with evidence in the record that the Iranian Defendants provided "material support in furthering the attacks involved in this litigation." *Id.* The Court also indicated that it wished to receive all submissions, as against all Defendants and on behalf of all Plaintiffs, at one time rather than considering the liability evidence separately on behalf of all the Plaintiffs and as to all the Defendants.

Accordingly, Plaintiffs have obtained additional evidence respectfully submitted herein which demonstrates (1) Hamas committed the eleven attacks at issue in this litigation[2]; (2) that the Iranian Defendants provided material support to Hamas during the time frame of these specific attacks which furthered Hamas' ability to carry out said attacks which proximately

---

[2] Plaintiffs incorporate by reference the arguments and evidence set forth in its August 31, 2015 Motion for Default Judgment and request that the Court take judicial notice of the jury and Court findings in the *Linde* trial holding Hamas liable for committing nine of the attacks.

caused Plaintiffs' injuries in this action, and (3) the Syrian Defendants provided material support to Hamas during the time frame of these specific attacks which furthered Hamas' ability to carry out said attacks which proximately caused Plaintiffs' injuries in this action.

The Plaintiffs, and each of them, respectfully move and pray this court will enter Judgment, jointly and severally, as to liability for each and all the Defendants named herein.

## ARGUMENT

### I. MOST OF THE FSIA REQUIREMENTS FOR LIABILITY UNDERE 28 U.S.C. § 1608(e) ARE EASILY MET

In order to establish subject matter jurisdiction in a default setting, Plaintiffs need to demonstrate "that the foreign state was designated a state sponsor of terrorism; that the claimant or victim was a U.S. national, service member, or government employee at the relevant time; and that, in certain circumstances, the foreign state was given a chance to arbitrate. *Owens v. Republic of Sudan*, CA 08-1361, (JDB) 2016 U.S. Dist. LEXIS 37464, at *89 (D.D.C. 2016) (*citing* 28 U.S.C. § 1605A(a)(2)(A)(i)-(iii)). As described below, both sovereign Defendants were listed by the US Department of State as state sponsors of terrorism at the time of the attacks; and both remain so listed.  And as alleged in the Complaint, (Compl. ¶ 1-333), all Plaintiffs were United States citizens when they were brutally attacked in each and all of the Hamas terrorist attacks. Finally, the requirement to arbitrate the claim prior to the initiation of this lawsuit does not apply where, as here, the immediate acts causing the death of the decedents, their torture and murder, occurred in Israel and not in Syria or Iran. *See* 28 U.S.C. § 1605A(a)(2)(A)(iii).

Plaintiffs also need to demonstrate a "plausible claim" that Defendants provided "material support" for the murder of or injury to Plaintiffs. *Id. citing Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008). 28 U.S.C. § 1605A(a) provides that a

foreign state shall not be immune from the jurisdiction of U.S. courts in cases where plaintiffs

seek money damages for personal injury or death caused by hostage taking, torture, or

extrajudicial killing, if the damages were caused by:

(1) the provision of "material support or resources" for hostage taking, torture, and
   extrajudicial killing;
(2) if the provision of material support was engaged in by an official while acting within the
   scope of his office;

28 U.S.C. § 1605A(a)(1), (a)(2). As described below, in addition to the new evidence submitted

by Plaintiffs regarding Iran's liability, there are many judicial decisions already finding that Iran

supported Hamas at the time of the attacks in this case. *Infra*, at III. B. 22. Plaintiffs also submit

new evidence regarding Syrian support for Hamas at the relevant times in this case, support that

is more than sufficient for the Court to make a finding of liability here. *Infra*, at IV. 29. And

there is no doubt that the Iranian and Syrian agents or employees who engaged in this support

did so as a part of the official policy of their respective governments. *Infra*, at III. A. 18. and IV.

B. 33.

     28 U.S.C. § 1605A(c) complements the jurisdictional grant in Section 1605(A)(a) by

providing a private right of action to recover damages for state-sponsored terrorism:

(c) Private Right of Action-A foreign state that is or was a state sponsor of
terrorism ... shall be liable to-(1) a national of the United States ... or (4) the legal
representative of [such] a person, for personal injury or death caused by acts
described in subsection (a)(1) [i.e., the provision of material support or resources
for hostage taking, torture, or extrajudicial killing].... In any such action, damages
may include economic damages, solatium, pain and suffering, and punitive
damages. In any such action, a foreign state shall be vicariously liable for the acts
of its officials, employees, or agents.

28 U.S.C. § 1605A(c). Under § 1605A(c), U.S. citizens who are victims of state-sponsored

terrorism can sue a responsible foreign state directly for the provision of material support for

"torture" or "extrajudicial killing". *See* 28 U.S.C. § 1605A(a)(1). Plaintiffs must prove their

causes of action and entitlement to damages under 28 U.S.C. § 1605A(c) to the Court or special

master that the Court deems acceptable, after Plaintiffs meet their burden at this procedural stage.

II.    **HAMAS' RESPONSIBILITY FOR THE ELEVEN TERRORIST ATTACKS WHICH ARE BEFORE THIS COURT HAS BEEN ESTABLISHED BY A PRIOR JUDICIAL DECISION AND BY ADDITIONAL EVIDENCE PROCURED BY PLAINTIFFS.**

   **A.   Evidence and Expert Testimony Establish that Hamas is the Responsible Terrorist Organization for Committing these Eleven Attacks.**

As stated above, there are eleven Hamas terrorist attacks, enabled by Iran and Syria's

material support, at issue in this case.  Hamas, both an acronym for Harakat al-Muqawama al-

Islamiya (Islamic Resistance Movement) and an Arabic word meaning "zeal", is a Palestinian

Islamist group that emerged in 1987 as an outgrowth of the Palestinian branch of the Egypt-

based Muslim Brotherhood. *See* Declaration of Dr. Matthew Levitt at p.18[3], attached hereto as

Exhibit A (hereinafter "Levitt Decl.").  Hamas was founded in December of that year with the

goal of eliminating the State of Israel and establishing in its place an Islamist state in all of what

was once British Mandatory Palestine--a territory that today comprises Israel, the West Bank,

and the Gaza Strip.  *Id.*  Hamas employs a three-pronged strategy to achieve this goal: (1) social

welfare activity that builds grassroots support for the organization, (2) political activity that

---

[3] Plaintiffs request that this Court, as it has in the past, find Dr. Matthew Levitt as a qualified expert under the Federal Rules for purposes of testifying on Hamas and Iran's support of Hamas. Dr. Levitt holds both a Masters of Law and Diplomacy (MALD) and a Ph.D. in International Relations from The Fletcher School of Law and Diplomacy at Tufts University, and has extensive experience spanning over two decades. As detailed in Dr. Levitt's Decl. and Curriculum Vitae attached thereto, Dr. Levitt has provided expert testimony in this Court, the United States Senate and House of Representatives to provide testimony on international terrorism, militant Islam and terrorist financing.  He has been qualified as an expert and provided expert testimony in U.S. federal court proceedings.  Ex. A. Dr. Levitt's methodology has been described as "the gold standard in the field of international terrorism" by a U.S. federal district court.  *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005).  The Supreme Court also cited his book on Hamas and its Iranian state-sponsorship in a decision regarding the constitutionality of 18 U.S.C. § 2339B and its prohibition on the provision of material support or resources to designated foreign terrorist organizations.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S. Ct. 2705, 2725, 177 L. Ed. 2d 355 (2010).

competes with the secular Palestinian Authority (PA), and (3) guerilla and terrorist attacks that target Israeli soldiers and civilians (and sometimes fellow Palestinians). *Id.*

In 1995, the United States Government designated Hamas as a "Specially Designated Terrorist" entity pursuant to the International Emergency Economic Powers Act. 50 U.S.C. § 1701, 1702; Prohibiting Transactions With Terrorists Who Threaten To Disrupt the Middle East Peace Process, 60 FR 5079, (Jan. 23, 1995). Only two years later, Hamas was identified and labeled as a "Foreign Terrorist Organization," pursuant to 8 U.S.C. § 1189. It is unlawful to provide material support and resources, including currency or monetary instruments, financial services, personnel, transportation, and other provisions to any components of a Foreign Terrorist Organization. *Id.*; *See* 18 U.S.C. § 2339A, 2339B.

Since its founding in 1987, Hamas has committed countless acts of violence against both military and civilian targets, including suicide and other bombings, Qassam rocket, mortar fire, and shooting attacks. Levitt Decl., at 20. With the onset of the Second Intifada in September 2000, the pace of Hamas attacks increased dramatically. *Id.* From September 29, 2000, through March 24, 2004, Hamas executed 52 suicide attacks killing 288 people and wounding 1,646 more. In total, Hamas conducted 425 terrorist attacks during this period killing 377 people and wounding 2,076. Levitt Decl. at 20 *citing* Israel Ministry of Foreign Affairs, "Hamas Terrorist Attacks," Terror Background, March 22, 2004, http://www.mfa.gov.il/MFA/Terrorism-+Obstacle+to+Peace/Terror+Groups/Hamas+terror+attacks+22-Mar-2004.htm).

Here the Plaintiffs were killed and/or injured in terrorist attacks during the relevant time period. Specifically, the attacks at issue include:

1. The April 30, 2003 bombing of Mike's Place, a music club in Tel Aviv, Israel next to the U.S. Embassy (the Baxter Plaintiffs[4]);

2. The September 9, 2003 bombing of Café Hillel in Jerusalem (the Applebaum Plaintiffs[5]);

3. The March 7, 2002 bombing at Otzem in the community of Atzmona, Israel (the Bluth Plaintiff[6]);

4. The June 11, 2003 bombing of Bus No. 14A, near the corner of Jaffa Road and Prophet Street in Jerusalem (the Tita, Friermark, Bluth and Cantrell Plaintiffs[7])

5. The December 1, 2001 bombing of the Ben Yehuda pedestrian mall in Jerusalem, Israel (the Grossman, Leifer and Waxler Plaintiffs[8]);

6. The March 7, 2003 shooting at Kiryat Arba, Israel (the Horowitz Plaintiffs[9]);

7. The March 5, 2003 bombing of Bus No. 37 in Haifa, Israel Israel (the Litle Plaintiffs[10]);

8. The March 27, 2002 bombing of the Park Hotel in Netanya, Israel (the Naimi Plaintiffs[11]);

9. The August 19, 2003 bombing of Bus No. 2 in Jerusalem, Israel (the Reinitz Plaintiffs, the Richter Plaintiffs and the Zarkowsky Plaintiffs[12]);

10. The January 29, 2004 bombing of Bus No. 19 in Jerusalem, Israel (Schecter Plaintiff[13]); and

---

[4] *See* Compl. at 21, *Baxter v. Islamic Republic of Iran*, 11-cv-2133 (RCL) (D.D.C. Nov. 11, 2011), ECF No. 1; Am. Compl. at 1, *Litle v. Arab Bank*, 04-cv-5449 (BMC) (E.D.N.Y. Dec. 18, 2006), ECF No. 243.
[5] *See* Compl., *supra* note 7, at 21; Am. Compl., *supra* note 7, at 1.
[6] *See* Compl., *supra* note 7, at 21; Am. Compl., *supra* note 7, at 3.
[7] *See* Compl., *supra* note 7, at 21-22; Am. Compl., *supra* note 7, at 1-3.
[8] *See* Compl., *supra* note 7, at 21-22; Am. Compl., *supra* note 7, at 3.
[9] *See* Compl., *supra* note 7, at 21; Am. Compl., *supra* note 7, at 2.
[10] *See* Compl., *supra* note 7, at 21; Am. Compl., *supra* note 7, at 1.
[11] *See* Compl., *supra* note 7, at 21; Am. Compl., *supra* note 7, at 1.
[12] *See* Compl., *supra* note 7, at 21-22; Am. Compl., *supra* note 7, at 2.
[13] See Compl., *supra* note 7, at 21; Am. Compl., *supra* note 7, at 1.

11. The September 24, 2004 mortar attack on Neve Dekalim, Israel (Tratner Plaintiffs[14]).

Dr. Levitt concluded in his expert opinion Hamas committed these attacks with the intent to terrorize and to instill fear in the civilians.  *See* Levitt Decl. at 21-22, (identifying a non-comprehensive collection of some of the major attacks tied to Hamas in 2001-2004).

In addition to Dr. Levitt's expert conclusions, a federal jury, after hearing evidence, found that Hamas was responsible for these eleven attacks. Verdict Form, *Linde v. Arab Bank*, 04-cv-2799 (BMC) (E.D.N.Y. Sept. 22, 2014), ECF No. 1099.[15]

---

[14] See Compl., *supra* note 7, at 21; Am. Compl., *supra* note 7, at 1.

[15] When challenged by defendant under Fed. R. Civ. P. 50, the *Arab Bank* court upheld nine of the eleven attacks as based on sufficient evidence, and overturned two [listed as attacks 10 and 11 above]. *Linde v. Arab Bank, PLC*, 2015 U.S. Dist. LEXIS 45903, at *135-38 (E.D.N.Y. Apr. 8, 2015) ("April 8th Order").  Regarding the January 29, 2004 bombing of Bus No. 19, the *Arab Bank* court's overturning of the verdict in its April 8th Order was based upon clear error.  The court granted the Rule 50 relief based in part on the assumption that the trial evidence demonstrated that Muhammad Nashash, who recruited the Bus No. 19 bomber had been convicted of acting on behalf of Al Aqsa Martyrs Brigade ("AAMB") and not Hamas.  However, upon further review of the record in *Arab Bank*, there was a transcription error in the original Hebrew language sentencing document was provided as evidence, as PX4045, and attached hereto as Exhibit B.

   The transcription of Nashash's sentencing contains a typographical error on page 1 at line 27 where it refers to Nashash's conviction for his membership in the Al-Aqsa Martyrs' Brigade.  When the Court reviews the actual certified translations and amended indictments for Muhammad Nashash attached hereto as Exhibits C and D, the Court will observe that the terrorist organization which Nashash was charged with being a member of and which he pled guilty to being a member of was Hamas' Izz ad-Din al-Qassam Brigades, not AAMB.  See Exhibit C at 2 and Exhibit D at 3.  Moreover, Plaintiffs' expert in the *Arab Bank* trial Ronni Shaked in his testimony maintained that Nashash acted on behalf of Hamas, and the jury determined that Mr. Shaked's testimony was credible as to Hamas' liability for that attack, notwithstanding the reference to AAMB, which was based upon an error on the transcription of the sentencing. It was not until after the trial and the issuance of the April 8th Order that the transcription error was identified.  Plaintiffs filed a Motion to Reconsider the Court's April 8th Order on April 20, 2015 (D.E. 1246), based in part upon this transcription error.  The *Arab Bank* court never ruled on the reconsideration motion as the Court later determined the matter moot in light of further proceedings in the *Arab Bank* case. (Minute Order, August 17, 2015).  Here, Plaintiffs respectfully request that the Court take note of the transcription error, and based upon the jury's verdict wherein the jury found that Hamas recruited the suicide bomber and facilitated the Bus No. 19 bombing, and also the expert testimony of Dr. Levitt presented herein, and find that Hamas was indeed the terrorist organization responsible for the Bus No. 19 bombing on January 29, 2004.

   Regarding the September 24, 2004 mortar attack at Neve Dekelim, the *Arab Bank* court erred when it found that Hamas' claim of responsibility for the attack was an insufficient basis for the jury.  Following the terrorist attack, media entities reported that Hamas had directly contacted them and had fully and publicly assumed responsibility.  The Associated Press, through a correspondent of the agency in Gaza, reported that the mortar shells had been fired by Hamas, and that the organization had assumed responsibility by means of a videotape. According to AP, "Hamas assumed responsibility for the firing of the two mortar shells into Neve Dekalim. *See* Exhibit E (Tratner 31). In addition, the Israeli daily Ha'aretz reported, through its military correspondent, Amos Harel, that "the Izz al-Din al-Qassam Brigades, the military arm of Hamas, assumed responsibility." *See* Exhibit F (Tratener 32). Finally, the al-Qassam Brigades published at least two leaflets on their web site (both on September 24, 2004), in which they publicly accepted responsibility for the terrorist attack. The leaflets can still be viewed on that web site (www.alqassam.ps). http://www.alqassam.ps/arabic/statments.php?id=755 ;see also:

**B. Under Fed. R. Evid. 201, this Court can take judicial notice of previously-rendered conclusions of facts and law that establish Hamas's liability for acts of terrorism.**

    **1. Under Fed. R. Evid. 201, this Court may judicially notice findings of fact and conclusions of law, including those in judicial records.**

In this case, the Court "may take judicial notice of related proceedings and records in cases before the same court" and examine other cases in this court which issued judgments based upon Hamas' responsibly for murder and injuries of U.S. citizens.  Fed. R. Evid. 201 allows courts to take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see Opati v. Republic of Sudan*, 60 F. Supp. 3d 68, 73 (D.D.C. 2014) (stating "[c]ourts in this district have done so frequently in the FSIA context.") *citing Booth v. Fletcher*, 101 F.2d 676, 679 n.2 (D.C. Cir. 1938); 29 Am. Jur. 2d Evidence § 151.  Facts not subject to reasonable dispute include those (1) that are "generally known within the trial court's territorial jurisdiction," or (2) which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  It is well established in this

---

http://www.alqassam.ps/arabic/statments.php?id=754.  The first leaflet took the credit for "firing three 100 mm mortar shells at the 'settlement' of Neve Dekalim at exactly 10:30 a.m."
http://www.alqassam.ps/arabic/statments.php?id=754.  The second leaflet repeated the information and added that the terrorist attack had "killed two enemy soldiers and lightly wounded two others."
http://www.alqassam.ps/arabic/statments.php?id=755.
Hamas' claim of responsibility for the attack is admissible as a declaration against interest.  As the *Linde* Court stated, "claiming responsibility for a terrorist attack is plainly against Hamas' penal interest." *Linde*, 97 F. Supp. 3d at 339.  For a statement to be admissible under Rule 804(b)(3), a court must determine that "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest." *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004). The rule does not require that the declarant be aware that the incriminating statement could subject him to immediate criminal prosecution, but only that it tended to subject him to criminal liability.  *See United States v. Lang*, 589 F.2d 92, 97 (2d Cir. 1978).  It is beyond reasonable dispute that Hamas' claim of responsibility for a violent terrorist attack on civilians located in Israel could subject the organization and its members to penal consequences, including crackdowns, arrests and even assassination by Israel.  *Linde*, 97 F. Supp. 3d 287. Moreover, because this is not a criminal case, Rule 804(b)(3)(B)'s requirement that the statement against interest have corroborating evidence does not apply because the declarant, here Hamas, is not exposed to criminal liability.  *Linde*, 97 F. Supp. 3d 287.  Therefore, there is no need for the Plaintiffs to provide any other corroborating reports.
    Even if the Court finds that it cannot definitively state that the mortar attack on September 24, 2004 was carried out by Hamas, it does not need to do so.  Rather, imposing the "evidence satisfactory to the court" standard this Court may reasonably conclude that based on the assumption of responsibility by Hamas and Dr. Levitt's testimony and analysis as to the tactics adopted by Hamas, wherein he opines that Hamas was responsible for the attack, this Court may appropriately find that Hamas was responsible for the planning and perpetration of the attack.

circuit that courts may reach their own independent findings of fact based on judicial notice of evidence presented in earlier related proceedings. *Opati*, 60 F. Supp. 3d at 73 (granting a motion for default judgment where plaintiffs "rely solely" on "judicial notice of related proceedings and records in cases before the same court.") (*quoting Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 59 (D.D.C. 2010)); *see also Estate of Botvin*, 873 F. Supp. 2d at 237 ("the proper approach is one 'that permits courts in subsequent related cases to rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced.'") (*quoting Murphy*, 740 F. Supp. 2d at 58). Indeed, the court in *Opati* was correct in pointing out that "in the FSIA context" the courts of this circuit frequently take judicial notice of evidence presented in past judicial proceedings arising out of the same terrorist attack. 60 F. Supp. 3d at 73.[16]

---

[16] *See, e.g., Spencer v. Islamic Republic of Iran*, 922 F. Supp. 108, 109 (D.D.C. 2013) ("Courts may also take judicial notice of evidence presented in other related cases, including those where defendants failed to enter an appearance.") *citing Valore*, 700 F. Supp. 2d at 59; *Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. CIV.A. 06-727 JMF, 2013 WL 351610, at *71 (D.D.C. Jan. 29, 2013) *vacated in part and modified in part, Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. CIV.A. 06-727 JMF, 2013 WL 653921 (D.D.C. Feb. 12, 2013); *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 44, 49 (D.D.C. 2012) ("Finally, a FSIA court may 'take judicial notice of related proceedings and records in cases before the same court.'"); *Estate of Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 40 (D.D.C. 2012) (accepting "the issue of liability as [having] been [entirely] settled" by the court's judicial notice of "the findings of fact and conclusions of law in [a previous case] with respect to all issues of liability"); *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 29 (D.D.C. 2012); *Fain v. Islamic Republic of Iran*, 856 F. Supp. 2d 109, 115 (D.D.C. 2012) ("Because of the multiplicity of FSIA-related litigation, courts in this District have frequently taken judicial notice of earlier, related proceedings."); *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53, 73 (D.D.C. 2011); *Taylor*, 811 F. Supp. 2d at 6; *Estate of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1, 15 (D.D.C. 2011) ("The FSIA does not require this Court to re-litigate issues that have already been settled"); *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 6 (D.D.C. 2011); *Baker v. Socialist People's Libyan Arab Jamahiriya*, 775 F. Supp. 2d 48, 77 (D.D.C. 2011), *appeal dismissed by defendants, Baker v. Qadhdhafi*, No. 11-7034, 2011 WL 5515579 (D.C. Cir. Oct. 19, 2011); *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 7 (D.D.C. 2010); *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 1, 6 (D.D.C. 2010); *Anderson v. The Islamic Republic of Iran*, 753 F. Supp. 2d 68, 75 (D.D.C. 2010); *Ben-Rafael v. Islamic Republic of Iran*, 718 F. Supp. 2d 25, 31 (D.D.C. 2010) ("After all, 'courts have an interest [in] promoting uniformity of determinations with respect to the liability of foreign states for the terrorist acts of its officials, agents, and employees.'"); *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 54 (D.D.C. 2009); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 263 (D.D.C. 2006); *Prevatt v. Islamic Republic of Iran*, 421 F. Supp. 2d 152, 155 (D.D.C. 2006) (taking judicial notice of "findings made in a prior case arising from the same attack.").

This Court can always take judicial notice of evidence in the judicial records of related cases because "the judicial records 'establishing the type and substance of evidence that was presented to earlier courts' [are] 'not subject to reasonable dispute.'" *Opati*, 60 F. Supp. 3d at 73 (*quoting Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010) *citing* Fed. R. Evid. 201(b); *Oveissi*, 879 F. Supp. 2d at 50; *Valore v. Islamic Republic of Iran*, 700 F. Supp. at 59; *see Booth*, 101 F.2d at 679 ("A court may take judicial notice of, and give effect to, its own records in another but interrelated proceeding . . . ."). "The objective issue of what the evidence was—rather than the subjective determination of what the evidence means—is thus a proper exercise of judicial notice." *Rimkus*, 750 F. Supp. 2d at 172.

**2. This Court may render a liability judgment against FSIA defendants either by reviewing evidence considered in an opinion that is judicially noticed, or by adopting previous findings of fact and conclusions of law.**

In more than a dozen terrorism exception cases, this Court rendered default judgment against FSIA defendants by finding facts and making legal conclusions anew based on the evidence considered in judicially noticed opinions. *See supra* note 5. "A court clearly may judicially notice its findings of facts and conclusions of law in related cases . . . . [a]t issue is the effect of such notice." *Valore*, 700 F. Supp. 2d at 59. Even though "courts generally cannot take notice of findings of fact from other proceedings *for the truth asserted therein* because these are disputable and usually are disputed   . . . the FSIA does not require this Court to relitigate issues that have already been settled" in previous decisions." *Murphy*, 740 F. Supp. 2d at 58 (emphasis added). "Instead, the Court may review evidence considered in an opinion that is judicially noticed, without necessitating the re-presentment of such evidence." *Id.*

And the Court may rely on the findings of different judges in the same court, in cases based upon different terrorist attacks, as long as the same material-support-relationship is at issue. In

13

*Brewer v. Islamic Republic of Iran*, using Fed. R. Evid. 201, Judge Ellen Huvelle, "[r]elying on the pleadings and the above findings of other judges in this jurisdiction [Judge Thomas Penfield Jackson and Magistrate Judge Alan Kay]," concluded "that defendants provided 'material support and resources' to Hezbollah in carrying out the September 20, 1984 attack on the Embassy Annex in East Beirut." 664 F. Supp. 2d 43, 54 (D.D.C. 2009) *citing* to *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 134 (D.D.C. 2001); *Welch v. Islamic Republic of Iran*, No. 01-863, 2007 U.S. Dist. LEXIS 99191 (D.D.C. Sept. 20, 2007)). Furthermore, the court in *Brewer* supported this ruling by examining at least one case regarding a completely different terrorist attack, but which also revolved around the question of Iranian support for Hezbollah: "Defendants' connections to Hezbollah have been explored at length in this jurisdiction, and it has uniformly been agreed that in the relevant time period, Hezbollah received substantial funds and support from Iran via its Ministry of Information and Security and the Iranian Revolutionary Guard Corps." 664 F. Supp. 2d at 54 *citing Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 47 (D.D.C. 2008) and *Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261, 270–71 (D.D.C. 2005)). The *Brewer* court explained its use of Rule 201 to examine the wide range of prior opinions regarding Iran's support for Hezbollah because all the decisions issued from the same court: "this Court 'may take judicial notice of related proceedings and records in cases before the same court.'" 664 F. Supp. 2d at 54 (*quoting Estate of Heiser*, 466 F. Supp. 2d at 263).

Moreover, in FSIA litigation concerning terrorist attacks, on numerous occasions this court has gone one step further and found that a foreign terrorist organization committed an act of terrorism based solely on "adopting" prior decision's findings of fact and conclusions of law "in their entirety." *See, e.g.*, *Oveissi*, 768 F. Supp. 2d at 7; *Estate of Brown*, 872 F. Supp. 2d at 40 (accepting "the issue of liability as [having] been [entirely] settled" by the court's judicial notice

14

of "the findings of fact and conclusions of law in [a previous case] with respect to all issues of liability"); *Ben-Rafael*, 718 F. Supp. 2d at 31 ("Based on prior [findings and holdings] in *Ben-Rafael*, 540 F. Supp. 2d at 43–51, the Court reaffirms its ruling that plaintiffs here established their claims "by evidence satisfactory to the court" and reenters default judgment as to defendant Iran."); *Brewer*, 664 F. Supp. 2d at 54.

In addition, this Court has specifically found that Hamas committed certain acts of terrorism based on judicially-noticed findings of fact and conclusions of law drawn from prior decisions. *See, e.g.*, *Roth v. Islamic Republic of* Iran, 2015 U.S. Dist. LEXIS, at *4, *24 (D.D.C Jan. 27, 2015) (taking judicial notice of evidence received in *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 95 (D.D.C. 2006) and in *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003) to find that Hamas committed the act of terrorism at issue); *Bodoff v. Islamic Republic of Iran*, 907 F. Supp. 2d 93, 96, 103 (D.D.C. 2012) (taking judicial notice of facts found in a prior proceeding to find that Hamas was responsible for a bus bombing); *Beer v. Islamic Republic of Iran*, 2010 U.S. Dist. LEXIS 129953, at *7–8, *9 (D.D.C 2010) (concluding, "[b]ased on judicial notice of" evidence presented in a prior proceeding that was not in "reasonable dispute," that Hamas committed the bus bombing at issue).

The *Baxter* case is related to at least two cases where the court has rendered a decision finding Iran liable for murders and injuries as a result of its material support of Hamas: *Estate of Botvin*, 873 F. Supp. 2d at 237–38 and *Roth v. Islamic Republic of Iran*, 2015 U.S. Dist. LEXIS 9390, at *8. In addition, in *Bluth v. Islamic Republic of Iran*, No. CV 12-250 (GK), 2016 WL 4491760, at *1 (D.D.C. Aug. 25, 2016) the Court found that Hamas had committed the attack which injured Mr. Bluth, and held Iran liable for the injuries sustained by Mr. Bluth as a result of the material support that Iran provided to Hamas.

15

**3.   Plaintiffs in this matter are the same individuals who proved they were injured by Hamas in the *Arab Bank* case; this Court should take judicial notice of Hamas's responsibility for the attacks that caused their injuries in this case as well.**

The Plaintiffs in this matter are the same individuals who also filed an action against the Arab Bank, PLC in the *Arab Bank* case, arising out of the same facts, circumstances and attacks as in the within action. *Compare* Compl., *Baxter v. Islamic Republic of Iran*, 11-cv-2133 (RCL) (D.D.C. Nov. 11, 2011), ECF No. 1. *and* Compl., *Litle v. Arab Bank*, 04-cv-5449 (BMC) (E.D.N.Y. Dec. 18, 2006), ECF No. 243.

In *Arab Bank*, a federal jury found that Hamas was responsible for these eleven attacks. Verdict Form, *Linde v. Arab Bank*, 04-cv-2799 (BMC) (E.D.N.Y. Sept. 22, 2014), ECF No. 1099. When challenged by defendant under Fed. R. Civ. P. 50, the *Arab Bank* court upheld nine of the eleven attacks as based on sufficient evidence. *Linde v. Arab Bank, PLC*, 2015 U.S. Dist. LEXIS 45903, at *135-38 (E.D.N.Y. Apr. 8, 2015).[17]  .

Thus, the same plaintiffs found to have been injured by Hamas in the *Arab Bank* case are now before this Court moving for the same finding. As noted above, this Court has attributed responsibility to a terrorist organization for the same attack in a new case based upon a prior finding in a different case.  *See supra*, I. A. 7. For example, *in Estate of Brown*, 872 F. Supp. 2d 37, with very little discussion, "the Court [took] judicial notice of the May 30, 2003 Memorandum Opinion in the consolidated cases of *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003), and *Peterson*, 264 F. Supp. 2d 46." 2010 U.S. Dist. LEXIS 144659, *4; *see also Estate of Brown*, 872 F. Supp. 2d at 40 (noting briefly that "the issue of liability [had been] settled" by the court's judicial notice of "the findings of fact and conclusions of law in

---

[17] See FN 15 which is incorporated herein by reference, and fully sets forth the evidence and facts with regard to attacks "10" and "11" supporting the finding of liability as to these two attacks.

[*Peterson*] with respect to all issues of liability," and proceeding to award damages). Likewise, in *Ben Rafael II*, this Court took judicial notice of a default judgment entered against Iran for a terrorist attack committed by Hezbollah, a foreign terrorist organization, and without reconsidering the evidence "reenter[ed] default judgment as to defendant Iran." 718 F. Supp. 2d at 31.  In both *Estate of Brown* and *Ben Rafael II*, the plaintiffs seeking judicial notice of findings and conclusions of law from a previous case were additional victims from the same attack as the individuals who were plaintiffs in the earlier case, thus justifying a finding of judicial notice of responsibility in the newer case.  In both cases, the court judicially noticed, *inter alia*, findings of fact and conclusions of law establishing that the same foreign terrorist organization, and its foreign state sponsor, were responsible for an attack on a different set of plaintiffs from the same attack.

Plaintiffs therefore respectfully move this Court to take judicial notice of the *Arab Bank* court's findings of fact and conclusions of law, which establish and uphold Hamas' responsibility for the same eleven attacks which resulted in Plaintiffs' injuries, including attacks 10 and 11, as set forth in FN 15.[18]

Accordingly, based upon the jury findings in the Arab Bank proceeding, and the additional evidence contained in Dr. Levitt's opinion, this Court should find that Hamas was responsible for carrying out and sponsoring these eleven attacks.

### III.    THE ISLAMIC REPUBLIC OF IRAN IS LIABLE FOR SUPPORTING HAMAS

### A. Iran Provided Hamas With Logistical and Financial Support to Enable it to Commit the Terrorist Attacks which Injured or Killed These Plaintiffs.

---

[18] *See* 29 Am. Jur. 2d Evidence § 151 ("A court may take judicial notice of closely related proceedings, particularly where the same parties are involved and the allegations from those proceedings have been proved, or where the cases are essentially the same").

Plaintiffs' expert Dr. Matthew Levitt has concluded that without Iran's support for Hamas, Hamas could not have carried out the attacks at issue in this case.  A "state sponsor of terrorism" refers to a country whose government the United States Secretary of State has determined, for purposes of Section 6(j) of the Export Administration Act of 1979, (50 U.S.C. § 4605(j)), Section 620A of the Foreign Assistance Act of 1979, (22 U.S.C. § 2371), Section 40 of the Arms Export Control Act, (22 U.S.C. § 2780), or any other provision of law, "is a government that has repeatedly provided support for acts of international terrorism," 28 U.S.C. § 1605A(h)(6); *see also* "Terrorist Groups," U.S. Department of State, https://www.nctc.gov/site/groups.html; *see e.g.*, *Bluth*, 2016 WL 4491760, at *2.  The Islamic Republic of Iran ("Iran") has been identified as a state sponsor of terrorism since January 19, 1984. *See e.g.*, *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 65 (D.D.C. 2015) (citations omitted).

Hamas has historically received significant financial and other support—especially training—from Iran, which the CIA describes as "the foremost state sponsor of terrorism." Levitt Decl. at 7.  This was especially true during the Second Palestinian Intifada (September 2000-February 2004), which saw a sharp spike in acts of Palestinian terrorism, mostly by groups supported by Iran.  *Id.*

Iran also "provides logistical support to Hamas and military training to its members." Levitt Decl. at 7 *citing* Ziad Abu-Amr, *Islamic Fundamentalism in the West Bank and Gaza: Muslim Brotherhood and Islamic Jihad* (Bloomington, IN: Indiana University Press, 1994), p. 88).  According to Canadian intelligence, "Hamas has training camps in Iran, Lebanon, and Sudan.  Hamas camps in Lebanon are said to be under Iranian supervision." *Id. citing* "Terrorist Group Profiler," Canadian Secret Intelligence Service (CSIS), June 2002, Author's personal

18

files; *see also* Stewart Bell, "Hamas May Have Chemical Weapons: CSIS Report Says Terror

Group May be Experimenting," *National Post* (Canada), December 10, 2003.

Iran's financial support is also very significant.  While estimates of Iran's financial

assistance to Hamas vary, there is consensus that the sum has been significant.  According to

Israeli estimates, Iran contributed around $3 million a year in direct aid to Hamas as of 2003.

Levitt Decl. at 7.  Canadian intelligence cites assessments that Iran has transferred somewhere

between $3 million to $18 million a year to Hamas.  *Id.* According to the CSIS report, "in

February 1999, it was reported that Palestinian police had discovered documents that attest to the

transfer of $35 million to Hamas from the Iranian Intelligence Service (MOIS), money

reportedly meant to finance terrorist activities against Israeli targets."  *Id.* Palestinian sources

estimate Iranian assistance to Hamas "at tens of millions of dollars."  In total, Iran gave terrorist

organizations, including Hamas and others, between $100 and $200 million per year during this

period.  *Id.* at 8.

Moreover, while it is irrelevant if a supporter of a terrorist group exclusively donates only

to the social welfare side of a terrorist organization[19], it is clear that Iranian financing is devoted

to military operations, and not given to support the social welfare, or *dawa* infrastructure of

Hamas.  *Id.* at 9.  According to a December 2000 Palestinian intelligence report confiscated by

Israeli authorities, Iran had transferred $400,000 directly to Hamas's Qassam Brigades to

specifically support "the Hamas military arm in Israel and encouraging suicide operations," and

another $700,000 to Islamic organizations opposed to the PA. Levitt Decl. at 10 *citing* "Iran as a

State Sponsoring and Operating Terror," Special Information Bulletin, Intelligence and

---

[19] *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 698 (7th Cir. 2008) ("But if you give money to an organization that you know to be engaged in terrorism, the fact that you earmark it for the organization's non-terrorist activities does not get you off the liability hook . . . .") *citing Hussain v. Mukasey*, 518 F.3d 534, 538–39 (7th Cir. 2008); *Singh-Kaur v. Ashcroft*, 385 F.3d 293, 301 (3d Cir. 2004).

Terrorism Information Center at the Center for Special Studies, Israel, April 2003, available

online at http://www.intelligence.org.il/eng/iran.htm. According to a former Jordanian prime

minister, "grassroots fundraising is really not enough for big Hamas operations.  Most of the

support [for such operations] is from Iran.  Iran's money is more influential." Levitt Decl. at 10

*citing* Levitt interview with Abdel-Elah Al-Khatib, Amman, Jordan, November 10, 2004. A

senior Fatah official and member of the Palestinian Legislative Council offered a similar

assessment, saying that while "some of Tehran's money over the past three years [2001-2004]

may go to supporting health and humanitarian services in Gaza," the bottom line is that the

"money from Tehran that goes to Hamas is for the political leaders of Hamas and for the

bombings, not for the Palestinians." Levitt Decl. at 10 *citing* Levitt interview with Hatem Abd al-

Qader, East Jerusalem, Israel, November 17, 2004.

Iran also runs terrorist training camps of its own in Lebanon, aside from the Iranian-

funded camps Hezbollah operates there. In August 2002, Tehran was reported to have financed

camps under General Ali Reza Tamzar, commander of Islamic Revolutionary Guard Corps

(IRGC) activity in Lebanon's Beka'a Valley.  Levitt Decl. at 12.  These camps were designed to

train Hezbollah, Hamas, Palestinian Islamic Jihad, and Popular Front for the Liberation of

Palestine–General Command (PFLP-GC) terrorists in the use of the short-range Fajr-5 missile

and the SA-7 antiaircraft rocket.[20]

According to the US State Department, Iranian state sponsorship of Hamas is critical not

only in terms of providing the material and funds with which to carry out terrorist operations, but

also the rhetorical support necessary to keep up the pace of such operations:

> During 2003, Iran maintained a high-profile role in encouraging anti-Israeli
> activity, both rhetorically and operationally. Supreme Leader Khamenei praised
> Palestinian resistance operations, and President Khatami reiterated Iran's support

---

[20] "Iran Establishes Rocket Training Centers in Lebanon," Middle East Newsline, August 8, 2002

for the "wronged people of Palestine" and their struggles. Matching this rhetoric with action, Iran provided Lebanese Hizballah and Palestinian rejectionist groups—notably HAMAS, the Palestine Islamic Jihad, and the Popular Front for the Liberation of Palestine–General Command—with funding, safe haven, training, and weapons. Iran hosted a conference in August 2003 on the Palestinian intifadah, at which an Iranian official suggested that the continued success of the Palestinian resistance depended on suicide operations.

*Patterns of Global Terrorism 2003, U.S. State Department, "Overview of State Sponsored Terrorism," http://www.state.gov/documents/organization/31944.pdf* at 88. This relationship has continued over time. According to a 2010 U.S. Department of Defense report on Iran's military power, Iran provides Hamas and other Palestinian terrorist groups "with funding, weapons, and training to oppose Israel and disrupt the Middle East Peace Process." *Unclassified Report on Military Power of Iran April 2010,* U.S. Department of Defense, https://fas.org/man/eprint/dod_iran_2010.pdf.  The Defense Department report added that Iran's support for Hamas and other Palestinian terrorist groups, "produced improvements in the groups' capabilities and increased the threat to Israeli and U.S. interests in the region." *Id.* More generally, the Defense Department report noted that "Iran continues to supply weapons, money, and weapons components to Palestinian extremist groups that are then smuggled into Gaza through tunnels in the Philadelphia corridor" (which runs along the Gaza-Egypt border). *Id.*

As discussed above in part II. A, Dr. Levitt concluded that Hamas committed the specific attacks which are before this Court. Levitt Decl. at 21-24. Moreover, Dr. Levitt also concludes that Iran provides significant financial and material support to Hamas, without which Hamas could not have carried out these attacks. Levitt Decl. at 24. This critical and massive support enabled Hamas to carry out attacks from indiscriminate suicide bombings to shooting sprees and more, sometimes targeting soldiers but often civilians, including the Plaintiffs who have brought their claims before this Court.

**B. Under Fed. R. Evid. 201, this Court should take judicial notice of the numerous decisions finding that Iran materially supported Hamas in its execution of acts of terrorism.**

As discussed above, under Fed. R. Evid. 201, this Court can take judicial notice of conclusions of liability entered in previous cases. This Court has, on numerous occasions, concluded that The Islamic Republic of Iran (and its Ministry of Information and Security ("MOIS")) was liable for providing various kinds of material support to Hamas for the express purpose of enabling Hamas to launch various terrorist attacks resulting in the injury and/or murder of American citizens. This Court is able to take judicial notice of the following decisions, which enable it to conclude that Iran materially supported Hamas, and thereby enabled Hamas to commit the aforementioned eleven acts of terrorism that injured the Plaintiffs between December 1, 2001 and September 24, 2004:

1. In *Roth v. Islamic Republic of Iran*, the court found that on August 9, 2001 Hamas detonated a ten-pound bomb at a Sbarro restaurant. 2015 U.S. Dist. LEXIS 9390, *5 (D.D.C. Jan. 27, 2015). This Court found Iran liable for the attack because it provided material support to Hamas as early as 1999. *Id.* at *9, *24 (finding that defendants (1) provided substantial support to Hamas through provision of money and training and (2) encouraged the escalation of terrorist activities, including against Israeli targets; that these acts have a reasonable connection to the at-issue attack ultimately carried out by Hamas; and that this is sufficient to establish proximate cause under the FSIA);

2. In *Goldberg-Botvin v. Islamic Republic of Iran*, the court found that on September 24, 1997, Hamas detonated several cases of powerful explosives at the crowded Ben Yehuda Street pedestrian mall in Jerusalem, Israel. 938 F. Supp. 2d 1, 5 (D.D.C. 2013). This Court found Iran liable for the attack because it provided material support to Hamas as

early as the early 1990's. *Id.* at 7, 9 (finding that Iran provided substantial support for Hamas' terrorist activities for the purpose of undertaking attacks in Israel, funneled money and material support to Hamas, and played necessary planning, logistical, and support roles leading up the bombing);

3. In *Estate of Botvin v. Islamic Republic of Iran*, the Court found that on September 24, 1997, Hamas detonated several cases of powerful explosives at the crowded Ben Yehuda Street pedestrian mall. 873 F. Supp. 2d at 234. The Court found Iran liable for the attack because it provided material support to Hamas as early as the "early 1990's." *Id.* at 237–38 (finding that Iran provided financial, technical and other material support to Hamas and other terrorist groups, including Hezbollah and the Palestinian Islamic Jihad, at the time of the at-issue bombing in Israel);

4. In *Beer v. Islamic Republic of Iran*, the court found that on June 11, 2003, Hamas detonated a bomb on Egged bus No. 14A in Jerusalem, Israel. 2010 U.S. Dist. LEXIS 129953, at *12. The court found Iran liable for the attack because it provided material support to Hamas "well before the attack in 2003." *Id.* at 11, *6 (Nov. 9, 2010) ("Beer II") (finding that Iran "routinely provided financial and other assistance to Hamas—constituting material support under the FSIA" which led to Hamas's June 11, 2003 "bombing of Egged bus 14A");

5. In *Wachsman ex rel. Wachsman v. Islamic Republic of Iran*, the court found that in October 1994, Hamas abducted and executed Nachshon Wachsman, a U.S. citizen residing in Israel. 603 F. Supp. 2d 148, 151 (D.D.C. 2009). The court found Iran liable for the attack because it provided material support to Hamas as early as 1992. *Id.* at 154 (finding that Iran's official foreign policy is to support terrorism by providing economic

and training support to Hamas, that Iran funnels its financial support through its Ministry
of Information and Security, and that Iran provides professional military and terrorist
training through its Revolutionary Guard);

6. In *Beer v. Islamic Republic of Iran*, the court found that on June 11, 2003, Hamas
detonated a bomb on Egged bus No. 14A in Jerusalem, Israel. 574 F. Supp. 2d 1, 5
(D.D.C. 2008). The court found Iran liable for the attack because it provided material
support to Hamas leading up to the 2003 attack. *Id.* at 7, 9 (finding that (1) Iran has been
designated a state sponsor of terrorism continuously since January 19, 1984 and was so
designated at the time of the at-issue attack in Israel; (2) each of the plaintiffs was a U.S.
national at the time the bombing occurred; and (3) Iran knowingly provided material
support to Hamas, the entity that committed the at-issue attack in Israel; and treating
MOIS as the state of Iran itself so that the same determinations apply to MOIS conduct);

7. In *Kirschenbaum v. Islamic Republic of Iran*, the court found that on December 1, 2001,
Hamas detonated a bomb at the Ben Yehuda Street pedestrian mall in Jerusalem, Israel.
572 F. Supp. 2d 200, 204 (D.D.C. 2008). The court found Iran liable for the attack
because it had "continuously" provided material support to Hamas. *Id.* at 209, 210
(finding that Iran knowingly provided material support to Hamas, the entity that
committed the attack, and treating MOIS as the state of Iran itself so that the same
determinations apply to MOIS conduct);

8. In *Bennett v. Islamic Republic of Iran*, the court found that on July 31, 2002, Hamas
detonated a bomb at the Frank Sinatra Cafeteria Building on the campus of Hebrew
University in Jerusalem, Israel. 507 F. Supp. 2d 117, 121 (D.D.C. 2007). The court found
Iran liable for the attack because it had "continuously" provided material support to

Hamas. *Id.* at 123–24 (explaining that Hamas, aka the Islamic Resistance Movement, is an organization supported by Iran dedicated to waging a holy war employing terrorism with the object of seizing the leadership of the Palestinian people and asserting sovereignty and the rule of the Muslim religion over all of Palestine, including all territory of the State of Israel);

9.  In *Sisso v. Islamic Republic of Iran*, the court found that on September 19, 2002, Hamas detonated a bomb on Bus No. 4 in Tel Aviv, Israel. 2007 U.S. Dist. LEXIS 48526, at *1 (D.D.C. July 5, 2007). The court found Iran liable for the attack because it had "intentionally provided material support [to Hamas] in furtherance of that terrorist activity in the years leading up to and including 2002." *Id.* at 11 (finding that Iran and MOIS knowingly and substantially provided material support and resources to Hamas in furtherance of Hamas's terrorist activities, such as the September 19, 2002 Tel Aviv bus bombing); *Id.* (finding that "Iran and MOIS have aided and abetted HAMAS' goal of Islamic jihad through perpetration of terrorist attacks in the West Bank, Gaza, and within Israel, and HAMAS has been encouraged by Iran to continue and increase such attacks, often acting in return for direct financial compensation from Iran for specific terrorist acts," and therefore that plaintiff may recover against Iran and MOIS for intentional infliction of emotional distress);

10. In *Bodoff v. Islamic Republic of Iran*, the court found that on February 25, 1996, Hamas detonated a bomb on Egged bus No. 18. 424 F. Supp. 2d 74, 77 (D.D.C. 2006). The court found Iran liable for the attack because it had provided material support to Hamas in the years "immediately preceding the attack." *Id.* at 79, 85 (finding that defendants Iran

conspired with, and providing material support to, Hamas in furtherance of the terrorist

suicide bus bombing that caused the death of Yonathan Barnea);

11. In *Greenbaum v. Islamic Republic of Iran*, the court found that on August 9, 2001,

Hamas detonated a bomb at a Sbarro restaurant in Jerusalem, Israel. 451 F. Supp. 2d at

94. The court found Iran liable for the attack because it had provided material support to

Hamas as early as 2000 including "the period immediately preceding the attack." *Id.* at 97

(finding that Iran actively provided material support to Hamas between 2000-2001 "at a

fever pitch");

12. In *Campuzano v. Islamic Republic of Iran*, the court found that on September 4, 1997,

Hamas carried out a triple suicide bombing at the crowded Ben Yehuda Street pedestrian

mall in Jerusalem, Israel. 281 F. Supp. 2d at 260. The court found Iran liable for the

attack because it had provided material support to Hamas as early as 1995. *Id.* at 262

(finding a bombing committed by Hamas would not have occurred without material

support from Iran);

13. In *Stern v. Islamic Republic of Iran*, the court found that on July 30, 1997, Hamas carried

out a double suicide bombing at the Mahane Yehuda outdoor produce market in

downtown Jerusalem, Israel. 271 F. Supp. 2d 286, 289 (D.D.C. 2003). The court found

Iran liable for the attack because it had provided material support to Hamas as early as

1994. *Id.* at 291, 298–299 (finding that Iran provided Hamas with massive amounts of

material support and resources, including military training of hundreds of operatives, for

the express purpose of carrying out terrorist attacks such as the bombing on July 30,

1997);

14. In *Weinstein v. Islamic Republic of Iran*, the court found that on February 25, 1996, Hamas detonated a bomb on Egged bus No. 18 in Jerusalem, Israel. 184 F. Supp. 2d 13, 15 (D.D.C. 2002). The court found Iran liable for the attack because it had provided material support to Hamas as early as 1995. *Id.* at 19, 21–22 (explaining, in detailed findings of fact, that Iran provided large-scale material and technical support to Hamas which enabled Hamas to commit certain bus bombings and which earned Iran a place on the U.S. Department of State's list of nations that support terrorism);

15. In *Mousa v. Islamic Republic of Iran*, the court found that on February 25, 1996, Hamas detonated a bomb on Egged bus No. 18 in Jerusalem, Israel. 238 F. Supp. 2d 1, 3 (D.D.C. 2001). The court found Iran liable for the attack because it had provided material support to Hamas "prior to and at the time" of the bombing. *Id.* (finding that Iran supports terrorist and other activities of Hamas, in monetary amounts ranging between $50 and $100 million per year, and did so prior to and at the time of the February 25, 1996 bombing at issue in this action); and

16. In *Eisenfeld v. Islamic Republic of Iran*, the court found that on February 25, 1996, Hamas detonated a bomb on Egged bus No. 18 in Jerusalem, Israel. 172 F. Supp. 2d 1, 4 (D.D.C. 2000). The court found Iran liable for the attack because it had provided material support to Hamas. *Id.* at 5 (finding that Hamas acknowledges support from Iran in the amount of $15 million per month, funds which support both terrorism and a broad range of welfare activities as part of its program).

17. In *Bluth v. Islamic Republic of Iran* the court found Iran as a "state sponsor of terrorism" who provided "material support or resources" to Hamas. Case No. CV 12-250 (GK), 2016 WL 4491760, at *2 (D.D.C. Aug. 25, 2016).  Having found that Hamas was

27

responsible for the March 7, 2002 attack in Atzmona, Israel the court held that Iran is liable under § 1605A(c) for any personal injuries caused by Hamas's attack.

18.    In *Braun v. Islamic Republic of Iran* the court found Iran and Syria to be "state sponsors of terrorism" who each provided material support and resources to Hamas, and having found that Hamas was responsible for the October 22, 2014 attack that murdered Chaya Zissel Braun.  Case No. CV 15-1136 (BAH) (D.D.C January 10, 2017).  For their material support of Hamas, the Court found both the Islamic Republic of Iran <u>and</u> the Syrian Arab Republic jointly and severally liable under § 1605A(c) for the damages caused by Hamas by the terrorist attack.

Different courts in this Circuit have found Iran responsible for multiple Hamas attacks in 1994, 1996, 1997, 2001, 2002, 2003, 2014, 2016, and 2017 based upon an extensive record of Iranian support for Hamas preceding those attacks.  Judicial notice of judicial records, especially in the FSIA context, allows courts to avoid "'relitigat[ing] issues that have already been settled' in previous decisions." *Murphy*, 740 F. Supp. 2d at 58 (*quoting Brewer*, 664 F. Supp. 2d at 55); *see Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 31 (D.D.C. 2012) ("When a court has found facts relevant to a FSIA case . . . , courts in subsequent, related cases may 'rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced.'") (*quoting Taylor*, 811 F. Supp. 2d at 6–7). Therefore, in light of the numerous decisions in this Circuit wherein Iran has been found liable for providing material support to Hamas, and upon the independent expert testimony of Dr. Levitt, who opines that "Iran provides significant financial and material support to Hamas, without which Hamas could not have carried out the quantity and quality of attacks from indiscriminate suicide bombings and

shooting sprees",[21] this Court should find the Iranian Defendants jointly and severally liable for the injuries suffered by the Plaintiffs in the eleven attacks and enter default judgment against the Islamic Republic of Iran, and the Iranian Defendants, and each of them, jointly and severally in the favor of each and all of the Plaintiffs in the within action.

## IV.   SYRIA IS LIABLE AS STATE SPONSOR OF HAMAS

In addition to finding Iran liable, as a state sponsor of the terrorism and sponsor of Hamas, for the injuries at issue in this case, this Court should find that the Syrian Defendants are jointly and severally liable for their timely and critical material support to Hamas.  Like the Iranian Defendants, Syrian Defendants may be held liable under 28 U.S.C. § 1605A if it (1) provided "material support or resources"  for hostage taking, torture, and an extrajudicial killing; (2) if the provision of material support was engaged in by an official while acting within the scope of his office; (3) the defendant was a "state-sponsor of terrorism" at the time the act complained of occurred; and (4) the claimant or the victim was a "US national" at the time of the act of terrorism.[22]  28 U.S.C. § 1605A(a)(1), (a)(2).

The evidence that the Syrian Defendants provided material support and resources, as defined by 18 U.S.C. § 2339A(b), to Hamas is on a scale such that the imposition of liability under 28 U.S.C. § 1605A(c) is required.  *See* Declaration of expert David Schenker[23] attached hereto as Exhibit G (hereinafter "Schenker Decl.") and incorporated herein by reference.

---

[21] Levitt Decl. at 23.

[23] Plaintiffs request that this Court find David Schenker as a qualified expert for purposes of testifying on issues relating to Hamas and Syrian Defendants' support of Hamas. As detailed in Mr. Schenker's Decl. and Curriculum Vitae attached thereto, Mr. Schenker has studied politics and history of Syria, Lebanon, the Palestinian territories and Hamas on the specific issue of their engagement in and support of terrorism for nearly 20 years.  He has an MA in Middle Eastern Studies from the University of Michigan, and was a fellow at Center for Arab Study Abroad (CASA) in Cairo, Egypt. He is fluent in Arabic.  From 2002-2006, he served as the Levant Director in the Office of the Secretary of Defense and was responsible for advising the Secretary and senior Pentagon leadership on military affairs of Syria, Jordan, Lebanon and the Palestinian territories .  He has been qualified as an expert and provided

For the purposes of satisfying the requirements of 28 U.S.C. § 1605A(a)(1), Syrian

Defendants provided safe haven (and more significant material support for the sponsorship of

and committing of terror) to Hamas beginning in 2001. Schenker Decl. at 6.   When a foreign

sovereign allows a terrorist organization to operate from its territory, this meets the statutory

definition of "safehouse" under 18 U.S.C. § 2339A(b):

> Insofar as the government of the Republic of Sudan affirmatively allowed and/or
> encouraged al Qaeda and Hezbollah to operate their terrorist enterprises within its
> borders, and thus provided a base of operations for the planning and execution of terrorist
> attacks -- as the complaint unambiguously alleges -- Sudan provided a "safehouse" within
> the meaning of 18 U.S.C. § 2339A, as incorporated in 28 U.S.C. § 1605(a)(7).

*Owens v. Republic of Sudan*, 412 F. Supp. 2d 99, 108 (D.D.C. 2006) (*aff'd and remanded*, *Owens*

*v. Republic of Sudan*, 531 F.3d 884 (D.C. Cir. 2008)).

In addition to the provision of a safehouse, there is compelling evidence that the Syrian

Defendants, by and through the Assad regime and individual members of the Assad regime

acting within the scope of their offices, provided significant material support for terror and

cooperated with Hamas leadership and its terrorist network, for the purposes of launching

terrorist attacks in Israel that inevitably killed and injured Americans.  Schenker Decl., at 11-13.

The third element required to establish jurisdiction asks whether the defendant foreign

sovereign was a "state-sponsor of terrorism" at the time the act complained of occurred.  28

U.S.C. § 1605A(a)(2)(A)(i)(I).  The term "state-sponsor of terrorism" is defined by the statute at

28 U.S.C. § 1605A(h)(6):

> the term 'state sponsor of terrorism' means a country the government of which the
> Secretary of State has determined, for purposes of section 6(j) of the Export
> Administration Act of 1979 (50 U.S.C. § 4605(j)), section 620A of the Foreign
> Assistance Act of 1961 (22 U.S.C. § 2371), section 40 of the Arms Export

---

expert testimony on Syrian state sponsorship of terrorism in U.S. federal court proceedings and before Congress.
Ex. F

Control Act (22 U.S.C. § 2780), or any other provision of law, is a government
that has repeatedly provided support for acts of international terrorism . . . .

The Syrian Arab Republic has been designated as a state-sponsor of terrorism continuously since December 29, 1979 and Syria's continued designation as a state-sponsor of terrorism was noted on May 18, 2004, 69 Fed. Reg. 28,098, 28,100 (2004), and in 2005, as well as at other times.  31 C.F.R. § 596.201 (2005). Moreover, Syria remains on the State Department list of State Sponsors of Terrorism today.  Schenker Decl., at 6

During the Second Intifada the Government of Syria "continued its longstanding policy of sponsoring terrorism by providing safe-haven to Hamas". *Id.*  From 2001-11, Hamas was headquartered in Damascus, Syria.  Schenker Decl. at 3.  Hamas' most senior leaders including Khaled Mashal, Musa Abu Marzouk, and Imad Alami resided and worked in the Syrian capital while directing its militants during the Second Intifada. *Id.* at 4.  In addition, members of Hamas who perpetrated terrorist attacks during the Second Intifada, received military training a terrorist training camps in Syria. *Id.*  This material support for terror was provided in tandem with the critical support that Iran also was supplying to Hamas at that time. *Id.*  In addition, according to Israeli enforcement officials, Hamas cells received funding to underwrite the recruitment and terrorist operations from the Syrian government.

### A.  <u>Syria Provided Safehaven, Material Support, to Hamas Leadership</u>

Between the years of 2000 and 2005, there was a close working relationship between Hamas and the Assad regime in Syria.  Schenker Decl. at 6.   According to the US Department of State's annual report Patterns of Global Terrorism, during the FY year 2000:

> Syria continued to provide safehaven and support to several terrorist groups, some of which maintained training camps or other facilities on Syrian territory…The Syrian Government allowed HAMAS to open a new main office in Damascus in March [2001]…In addition, Syria granted a variety of terrorist groups--including HAMAS, the

> PFLP-GC, and the PIJ--basing privileges or refuge in areas of Lebanon's Bekaa Valley under Syrian control.

*Id.*, *citing* Patterns of Global Terrorism, 2000.  http://www.state.gov/j/ct/rls/crt/2000/. The 2001

Report echoed the findings from the previous year, noting that "HAMAS continued to maintain

offices in Damascus... [and] provided Hizballah, HAMAS, PFLP-GC, the PIJ, and other terrorist

organizations refuge and basing privileges in Lebanon's Beka'a Valley, under Syrian control."

*Id., citing* Patterns of Global Terrorism, 2001,

http://www.state.gov/documents/organization/10296.pdf. The following year, the State

Department assessment was much the same:

> The Syrian Government has continued to provide political and limited material support to a number of Palestinian groups, including allowing them to maintain headquarters or offices in Damascus. …The most notable Palestinian rejectionist groups in Syria are the Popular Front for the Liberation of Palestine (PFLP), the Popular Front for the Liberation of Palestine-General Command (PFLP-GC), the Palestine Islamic Jihad (PIJ), and the Islamic Resistance Movement (HAMAS).

*Id., citing* Patterns of Global Terrorism, 2002,

http://www.state.gov/documents/organization/20117.pdf.   In 2003, the State Department

removed the qualifier "limited" in its assessment, suggesting that Syrian support for Hamas and

other Damascus-based groups had actually increased. The report read as follows:

> The Syrian Government in 2003 continued to provide political and material support to Palestinian rejectionist groups. HAMAS, the PIJ, the Popular Front for the Liberation of Palestine–General Command, and the Popular Front for the Liberation of Palestine operate from Syria…Many of these groups claimed responsibility for anti-Israeli terrorist acts in 2003.

*Id.*, *citing* Patterns of Global Terrorism, 2003,

http://www.state.gov/documents/organization/31944.pdf. In 2004, according to the State

Department report, Hamas "continue[d] to operate from Syria…" Patterns of Global Terrorism,

2004, http://www.state.gov/documents/organization/45322.pdf. By allowing Hamas to maintain

32

its headquarters in Damascus, Syria provided safehaven and other material support to the

leadership of Hamas to operate freely within the Middle East territories and to be enabled to

commit acts of terror against civilians, including the Plaintiffs in the within action.

**B.   The Syrian Defendants provided Operational and Financial Support to Hamas**

Beyond Syria's provision of sanctuary and access of training facilities to Hamas, from

2000-04 Hamas leadership in Damascus issued operational guidance to its minions and moved

money from the safety of Syrian-controlled territory to terrorists in the West Bank and Gaza.

Schenker Decl. at 11. Some of these funds were moved to Hamas via Usama Hamdan, a senior

Hamas official based in Beirut, Lebanon, the capital of a state which at the time was militarily

occupied by and under the control of Syria. *Id.*  The financial support to Hamas has also been

documented through the use of a tax which the Government imposed on state employees. *Id.* at

14.  The Government of Syria taxed state employees and diverted the money to Palestinian

"insurgent" groups—i.e., Hamas—based in Damascus.  *Id.*  According to one report, starting in

December 2004, public sector employees in Aleppo were taxed $1 per month to support these

terrorist groups Schenker Decl. at 14, *citing* "Syria Taxes Employees to Help Insurgents,"

*Middle East Newsline*, January 28, 2005.

In his report, Mr. Schenker provides testimony regarding evidence he gathered about the

training and instruction that Hamas operatives underwent in Syria.  *Id.* at 9.  These include

admissions by Hamas detainees that they were trained in Syria in small arms, and activation of

explosives, sabotage and security, activation of explosive devices by cellular phones, and

tracking and tailing including practical exercises in the streets of Damascus.  *Id.*  Finally,

beyond the operational and financial support for Hamas, during this period, Damascus also

served as a hub for smuggling weapons into Israel to be employed in terrorist attacks. *Id* at 13.

Mr. Schenker concludes that it is his expert opinion, based on experience and analytical judgment that Syria, as a state sponsor of terrorism specifically supported Hamas, a Foreign Terrorist Organization ("FTO"), during the Second Intifada, the armed Palestinian uprising against Israel from 2000-2004.  *Id.* at 19.  Hamas and its leaders received substantial material support from Syria, including but not limited to: operational and logistical support for its militants in the West Bank and Gaza, safehaven for its leadership in Damascus and the training of its militants in Lebanon, safe passage and transit across Syrian territory, and provision of financial assistance in support of Hamas as a matter of policy, before during, and after the Second Intifada. *Id.*  Without the material support provided by Syria, Hamas would have not been able to carry out terrorist attacks within Israel, the West Bank and Gaza Strip, including those at issue in this case. *Id.*  This extreme level of support undoubtedly satisfies the causation requirement under 28 U.S.C. § 1605A.  Causation under the FSIA has been defined by the D.C. Circuit to mean "proximate cause".  *Flanagan v. Islamic Rep. of Iran*, 2016 U.S. Dist. LEXIS 72331, *87 (D.D.C. June 3, 2016) *citing* to *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127–28 (D.C. Cir. 2004). "Proximate causation normally requires only that there be 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *Id. citing* to Prosser & Keeton on the Law of Torts 263 (5th ed. 1984); *Kilburn*, 376 F.3d at 1128). Proximate causation is "'often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct . . . .'" *Id..*, *quoting Paroline v. United States*, 134 S. Ct. 1710, 1719, 188 L. Ed. 2d 714 (2014)). Proximate cause precludes liability where the connection "'between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.'" *Id..*, *quoting Paroline*, 134 S. Ct. at 1719.

34

Accordingly, this Court should find the Syrian Defendants jointly and severally liable for the injuries suffered by the Plaintiffs in the eleven attacks and enter default judgment in their favor.

**V.      Default Judgment may be properly entered by this Court against the Iranian Defendants and Syrian Defendants as Plaintiffs have met their burden of proof.**

28 U.S.C. § 1608(e) provides that "no judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014) ("when the defendant State fails to appear and the plaintiff seeks a default judgment, the FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide, requiring *only* that it be 'satisfactory to the court.'"), *citing* 28 U.S.C. § 1608(e) (emphasis added).

To satisfy this burden, plaintiffs must present evidence concerning their backgrounds and injuries suffered, and also may request the Court take judicial notice of prior findings of fact and evidence from a related proceeding. *See e.g.*, *Taylor*, 811 F. Supp. 2d at 6–7. This allows courts to "rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced." *Murphy*, 740 F. Supp. 2d at 55. 28 U.S.C. § 1608(e) does not require any more evidence or a higher standard of evidence than the Court would ordinarily receive to render a judgment. *See Han Kim*, 774 F.3d at 1046 (finding that because the defendants "'[had] not participated in the proceedings' . . . the plaintiffs 'cannot be expected to meet a typical standard for judgment as a matter of law.'"); *see also Commercial Bank of Kuwait*, 15 F.3d at 242 (explaining that 28 U.S.C. § 1608(e) does not require "evidentiary

hearings or explicit findings where the record shows that the plaintiff provided sufficient evidence in support of its claims.").

Here, default judgment as to liability for Iran is proper given the Plaintiffs have demonstrated that (1) Hamas committed the eleven attacks which injured and/or killed them or their immediate family members and (2) Iranian Defendants are jointly and severally liable to the Plaintiffs under 28 U.S.C. § 1605A(c) for their role in sponsoring and providing massive amounts of material support to Hamas at the relevant times. Accordingly, as the Iranian Defendants have been served with summons, complaint and notice of suit, as required under 28 U.S.C. § 1608(a), and the Iranian Defendants have failed to answer, and default has been entered by the Clerk of Court, judgment may now be entered by this Court finding the Iranian Defendants jointly and severally liable for the Plaintiffs' injuries and damages.

Default judgment as to liability for Syrian Defendants is also proper given the Plaintiffs have demonstrated that (1) Hamas committed the eleven attacks which injured and/or killed them or their immediate family members and (2) Syrian Defendants are jointly and severally liable to the Plaintiffs under 28 U.S.C. § 1605A(c) for their role in sponsoring and providing massive amounts of material support to Hamas at the relevant times.  Accordingly, as the Syrian Defendants have been served with summons, complaint and notice of suit, as required under 28 U.S.C. § 1608(a), and the Syrian Defendants have failed to answer, and default has been entered by the Clerk of Court, judgment may now be entered by this Court finding the Syrian Defendants jointly and severally liable for the Plaintiffs' injuries and damages

**VI.** **Once a finding of liability has been made, Plaintiffs request the Court consider appointing a Special Master to assist the Court in assessing the Plaintiffs' damages.**

As described above, there are 135 individual plaintiffs who will need to present evidence to the Court. In the interest of judicial economy, Plaintiffs respectfully suggest that this Court may wish to utilize special masters for the assessment of their individual damages and loss as it has so many times in the past, so that judgments as to their damages may be entered by this Court without monopolizing the court's resources for an extended period of time.  Should the Court agree with Plaintiffs' suggestion, they will submit to the Court an administrative plan to govern the special master proceedings and will also suggest the names of several well-qualified special masters.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Plaintiffs accordingly request that the Court enter default judgment against the Iranian Defendants and Syrian Defendants, jointly and severally, on behalf of each and all of the Plaintiffs, finding that Iran's and Syria's material support for Hamas proximately caused these eleven acts of terrorism that resulted in Plaintiffs' murders or injuries. Plaintiffs further request that upon finding the Iranian Defendants and Syrian Defendants liable, this Court assign special masters to assess the individual Plaintiffs' damages and make recommendations regarding Plaintiffs' damages.

Dated: January 31, 2017                        Respectfully submitted,

                                               HEIDEMAN NUDELMAN
                                               & KALIK, P.C.
                                               1146 19th Street, N.W., 5th Floor
                                               Washington, DC 20036
                                               Telephone:  202-463-1818
                                               Telefax:  202-463-2999

                                               By: _/s/Richard D. Heideman_____
                                                   _/s/ Tracy Reichman Kalik_____
                                                Richard D. Heideman (No. 377462)
                                                Noel J. Nudelman (No. 449969)
                                                Tracy Reichman Kalik (No. 462055)

37

PERLES LAW FIRM, P.C
Steven R. Perles (No. 326975)
Edward MacAllister (No. 494558)
1050 Connecticut Avenue, N.W., 10th Floor
Washington, DC 20036
Telephone:  202-955-9055
Telefax:  202-955-3806