UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| )  | |
| WILLIAM "JACK" BAXTER, ET AL.　) | |
| ) | |
| Plaintiffs,　) | |
| ) | |
| v.　) | Civil Action No. 11- 2133 (RCL) |
| ) | |
| ISLAMIC REPUBLIC OF IRAN, ET AL.　) | |
| ) | |
| Defendants.　) | |
| ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED
MOTION FOR DEFAULT JUDGMENT AS TO LIABILITY**

COME NOW the Plaintiffs, by and through counsel, and hereby file this Supplemental

Memorandum in Support of their Renewed Motion for Default Judgment as to Liability (D.E.

30) as to the Defendants the Islamic Republic of Iran and Iranian Ministry of Information and

Security ("MOIS")(together collectively referred to as "Iranian Defendants").

On May 2, 2018 Plaintiffs' appeared before this Court for a Status Conference in the

above referenced action.  During the Status Conference, the Court and Plaintiffs' counsel

discussed that while they had moved for default judgment as to liability against the Iranian

Defendants[1], and default had been entered by the Clerk of Court for the Iranian Defendants[2],

with respect to the Syrian Arab Republic and Syrian Air Force Intelligence ("SAFI"), the Court

still had questions regarding the DHL service of the Complaint upon the Ministry of Foreign

Affairs for the Syrian Arab Republic, and the default that had previously been entered by the

Clerk of Court.[3]  Because the Court was satisfied that the Iranian Defendants were properly

---

[1] Plaintiff's Renewed Motion for Entry of Default Judgment as to Liability (D.E. 30, filed January 21, 2017)
[2] D.E. 26
[3] D.E. 25

1

served through diplomatic channels pursuant to 28 U.S.C. 1608(a)(4), the Court ordered that the suit against the Syrian Defendants be severed from the case pending against the Iranian Defendants, so that the Court could consider entering default judgment against the Iranian Defendants while the Plaintiffs separately moved to re-serve the Syrian Defendants through diplomatic channels.  (D.E. 31).[4]  Accordingly, as the Syrian Defendants have now been severed from this matter there is no reason for further delay in entering default judgment as to the liability of the Iranian Defendants by this Court.

At the May 2, 2018 Status Conference the Court further questioned  Plaintiffs' counsel as to whether the decision of the Second Circuit in *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) overturning the liability judgment in *Linde v. Arab Bank, PLC*, 04-cv-2799 (BMC) (VVP) (hereinafter "*Arab Bank*")[5]  was dispositive as to whether the Court could still take judicial notice and adopt the jury verdict as to attribution of the terror attacks at issue in this matter as to

---

[4] On May 8, 2018 the Syrian Defendants were severed from this action, and a new civil Action was opened by the Clerk of Court.  *See Baxter v. Syrian Arab Republic*, 18-cv-0178-RCL.  In accordance with this Court's Order, the Plaintiffs are in the process of re-serving the Syrian Defendants through diplomatic channels.  (D.E. 38)

[5] All Plaintiffs in this case also filed a lawsuit, *Litle v. Arab Bank*, 04-CV-5449 (NG) (VVP), against the Arab Bank, PLC for, *inter alia*, its material support of Hamas during the Second Intifada. *Compare* Compl., *Baxter v. Islamic Republic of Iran*, 11-cv-2133 (RCL) (D.D.C. Nov. 11, 2011), ECF No. 1. *and* Am. Compl., *Litle v. Arab Bank*, 04-cv-5449 (BMC) (E.D.N.Y. Dec. 18, 2006), ECF No. 243. The *Litle* case was consolidated for purposes of trial with the following cases: *Courtney Linde, et al. v. Arab Bank, PLC*, 04-CV-2799; *Oran Almog, et al. v. Arab Bank, PLC*, 04-CV-5564; *Robert L. Coulter, Sr., et al. v. Arab Bank, PLC*, 05-CV-365; *Gila Afriat-Kurtzer, et al. v. Arab Bank, PLC*, 05-CV-388; *Michael Bennett, et al. v. Arab Bank, PLC*, 05-CV-3183; *Arnold Roth, et al. v. Arab Bank, PLC*, 05-CV-03738; *Stewart Weiss, et al. v. Arab Bank, PLC*, 06-CV-1623. The consolidated action is known as *Linde v Arab Bank*. In *Arab Bank*, the court heard testimony and evidence regarding 24 separate attacks committed by Hamas from 2001 to 2004. Plaintiffs in this action were injured or killed in eleven of the attacks which were tried in *Arab Bank* before a jury, which found Hamas liable for committing all 24 attacks. Verdict Form, *Linde v. Arab Bank*, 04-cv-2799 (BMC) (E.D.N.Y. Sept. 22, 2014), ECF No. 1099. The defendant subsequently filed a Rule 50 post trial motion to overturn this finding, but the court upheld the jury verdict for 22 of the 24 attacks. *Linde v. Arab Bank, PLC*, 2015 U.S. Dist. LEXIS 45903, at *135-38 (E.D.N.Y. Apr. 8, 2015). With regard to the liability verdict that was overturned as to two attacks, the January 29, 2004 suicide bombing of Bus No. 19 and the September 24, 2004 mortar attack on Neve Dekelim, the Court ruled that Hamas's liability had not been fully proven by the *Arab Bank* plaintiffs. A motion to reconsider that ruling was pending before Judge Cogan, but was deemed moot due to the filing of Arab Bank's appeal. Plaintiffs' maintain that they have presented sufficient evidence as to Hamas's liability for the January 29, 2004 suicide bombing of Bus No. 19 and the September 24, 2004 mortar attack on Neve Dekelim and submit this evidence to the Court in this Supplemental filing.  Accordingly Plaintiffs Erik Schecter and Tiferet Tratner, and Shlomo Tratner also seek default judgment as to Iran's liability for their injuries at this time.

HAMAS, the Islamic Resistance Movement (or "Hamas"), since Plaintiffs had relied on the Arab Bank liability judgment to establish their attribution evidence that Hamas committed the eleven attacks.  Plaintiffs' advised the Court that the substance of the appeal by Arab Bank did not challenge whether HAMAS was responsible for committing the attacks which injured or killed these plaintiffs.  Rather, the Second Circuit based its decision on the instructions that the Court gave to the jury on the act of "international terrorism" element as defined in 18 U.S.C. § 2331(1) and whether Arab Bank's providing of financial services  constituted acts of international terrorism. The Second Circuit ruled that the trial judge was required to instruct the jury that it had to determine whether the defendant bank's conduct constituted an act of international terrorism under 18 U.S.C. §2331(1). There was no question on the appeal as to whether the evidence that Plaintiffs are relying on in this matter, to wit the attribution of the individual attacks to HAMAS was sufficient.   Accordingly, the Court can and should rely on the findings of fact in *Linde* pertaining to attribution of these eleven attacks to HAMAS.  *Linde*, 882 F.3d at 318.

However, in the event that the Court wishes to make its own findings of fact establishing the attribution of the attacks in question as to whether the Plaintiffs in this action were injured or killed by acts of HAMAS, Plaintiffs are respectfully submitting this Supplemental Memorandum to provide the Court with the relevant testimony and expert opinions establishing HAMAS' responsibility for these attacks. Upon determining that HAMAS is responsible for the eleven attacks in question, as argued in Plaintiffs' Renewed Motion for Default Judgment, the Court should find that Iran provided logistical an financial support to HAMAS to enable it to commit the terrorist attacks which injured or killed these Plaintiffs.  D.E. 30-1 at 17-21.  In Plaintiffs' Renewed Motion, Plaintiffs' present the expert testimony of Dr. Matthew Levitt who concludes

that without Iran's support, HAMAS could not have carried out the attacks at issue in this case. D.E. 30-1 at 18.  Moreover, Plaintiff's Renewed Motion relies of Fed. R. of Evid. 201, and avers that this Court should take judicial notice of the numerous decisions wherein federal courts have concluded that the Iranian Defendants are liable for providing various kinds of material support to HAMAS for the express purpose of enabling HAMAS to launch various terrorist attacks resulting in the injury and/or murder of American citizens.  (See D.E. 30-1 at 22-29.)

## I.   The Testimony and Expert Report of Ronni Shaked Should be Accepted and Weighed as Evidence By this Court

The Court may take into account testimony and evidence offered in another case to establish liability in this matter. A court may "accept as true plaintiffs' uncontroverted evidence, which may take the form of sworn affidavits or prior transcripts." *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 115 (D.D.C. 2015) *citing Estate of Botvin v. Islamic Republic of Iran*, 510 F.Supp.2d 101, 103 (D.D.C.2007). Such evidence may also include judicial notice of the evidence presented in related proceedings. *Botvin*, F.Supp.2d at 103.  In doing so, the court may review evidence, without necessitating the re-presentment of such evidence.  *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 59 (D.D.C. 2010).  In particular, "courts adjudicating related FSIA cases may 'rely upon the evidence presented in earlier litigation—without necessitating the formality of having that evidence reproduced—to reach their own, independent findings of fact in the cases before them.'"  *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 387 (D.D.C. 2015) *quoting Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010).

Accordingly, Plaintiffs submit the testimony and expert report of Ronni Shaked for this Court's independent evaluation to find that the eleven attacks at issue are properly attributable to

HAMAS.[6]  In submitting Mr. Shaked's testimony and report, Plaintiffs' proffer that Mr. Shaked

is an expert in his field.  As more particularly described in his report, Mr. Shaked has extensive

experience deciphering and analyzing terrorist activities in the Palestinian Territories and Israel.

*See* Excerpts of Expert Report of Ronni Shaked attached hereto as **Exhibit 1**.  Between 1969 and

1982, Mr. Shaked worked for the Israel Security Agency (ISA).  During his service to the ISA,

he held a number of positions including Commander of the Jerusalem Sector and Commander of

the Ramallah Sector.  During the course of his service to the ISA he handled agents who

operated within terrorist organizations operating in the Palestinian Territories, and participated in

and conducted interrogations of terrorist operatives.  Since leaving ISA, Mr. Shaked has served

as an analyst and researcher.  He holds a Master's degree in Middle Eastern Studies from

Hebrew University of Jerusalem and has provided expert testimony in the form of declarations,

deposition or trial testimony in six United States federal court cases, including, *Linde v. Arab*

*Bank, PLC*, 04-cv-2799 (BMC) (VVP); *Haim v. Islamic Republic of Iran*, 425 F.Supp.2d 56,

(D.D.C 2006); *Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286 (D.D.C. 2003); *Unger v.*

*Islamic Republic of Iran*, 211 F.Supp.2d 91(D.D.C. 2002); *Strauss v. Credit Lyonnais*, 06-cv-702

(E.D.N.Y, 2009 and *Weiss v. National Westminster Bank*, 05-cv-2633 (E.D.N.Y., 2010).

　　In his report, Mr. Shaked describes his methodology for determining how he is able to

attribute particular attacks to HAMAS.  **Ex. 1** at 4-16.  Among the materials which Mr. Shaked

considers when looking at whether HAMAS was responsible for a particular attack are (1) public

announcements; (2) mourning symbols and customs; (3) photographs and confessions of the

suicide bomber/terrorist attacker; (4) media; (5) plaques and monuments; (6) prison information;

---

[6] Mr. Shaked was an expert in the Arab Bank case and prepared a report and testified in that matter on behalf of the plaintiffs. Mr. Shaked's report and testimony pertains to the 24 attacks at issue in the Arab Bank liability trial which included the eleven attacks at issue in this matter.

(7) information from the Palestinian Inmates Club; (8) official investigations by the ISA and

Israel Police; and (9) official reports by the ISA and government of Israel.  Using all of these

methods, Mr. Shaked has concluded that the terrorist attacks which are at issue in this case, are

each specifically attributable to HAMAS.  **Ex. 1** at 16-17.

In addition to the information set forth his report, Mr. Shaked also provided trial

testimony at the *Linde* trial held before the Hon. Judge Brian Cogan in the Eastern District of

New York.  During his three days of testimony in August 2014, wherein he was subject to cross

examination, after setting forth his qualifications and methodology, Mr. Shaked offered detailed

evidence wherein he set forth the basis for a finder of fact to conclude that the attacks at issue in

this matter should be attributed to HAMAS.  *See Dutton v. Evans*, 400 U.S. 74, 88, 91 S. Ct. 210,

219, 27 L. Ed. 2d 213 (1970)(discussing in the context of the Confrontation Clause, why a

witness under oath, subject to cross-examination, and whose demeanor can be observed by the

trier of fact, is reliable not only as to what he has seen but also as to what he has heard.)  *See*

Excerpts of Trial Testimony of Ronni Shaked in the matter of *Linde v. Arab Bank, PLC*, 04-cv-

2799 attached hereto as **Exhibit 2.** He then described in detail why each of the attacks at issue

should be attributed to HAMAS.

II.     <u>The Eleven Attacks at Issue in this Matter Are Attributable to HAMAS</u>

This Court should find that the eleven attacks at issue in this case are attributable to

HAMAS.  As detailed in the chart below, Plaintiffs offer the testimony and expert report findings

of Ronni Shaked to support a finding by this Court of attribution.

<strong>Expert Report and Testimony of Ronni Shaked</strong>

| Attack | Plaintiffs | Expert Report | Trial Testimony |
|---|---|---|---|
| April 30, 2003 bombing of Mike's Place | Baxter Plaintiffs | **Ex. 1-A**, p.197-202 | **Ex. 2-A,** p. 1190-1210 |

| September 9, 2003 bombing of Café Hillel in Jerusalem | Applebaum Plaintiffs | **Ex. 1-B,** p.228-238 | **Ex. 2-B,** p.1228-1232 |
|---|---|---|---|
| March 7, 2002 bombing at Otzem (Atzmona) | Bluth Plaintiffs | **Ex. 1-C,** p.94-103 | **Ex. 2-C,** p. 1102-1107 |
| June 11, 2003 bombing of Bus No. 14A | Tita, Friermark, Bluth and Cantrell Plaintiffs | **Ex. 1-D,** p.209-215 | **Ex. 2-D,** p.1216-1219 |
| December 1, 2001 bombing of Ben Yehuda Street | Grossman, Leifer and Waxler Plaintiffs | **Ex. 1-E,** p.69-80 | **Ex. 2-E,** p.1068-1084 |
| March 7, 2003 shooting at Kiryat Arba | Horowitz Plaintiffs | **Ex. 1-F,** p.191-196 | **Ex. 2-F,** p. 1185-1190 |
| March 5, 2003 bombing of Bus No. 37 | Litle Plaintiffs | **Ex. 1-G,** p. 185-190 | **Ex. 2-G,** p. 1178-1185 |
| March 27, 2002 bombing of the Park Hotel | Naimi Plaintiff | **Ex. 1-H,** p.121-135 | **Ex. 2-H,** p. 1114-1139 |
| August 19, 2003 bombing of Bus No. 2 | Reinitz Plaintiffs, the Richter Plaintiffs and the Zarkowsky Plaintiffs | **Ex. 1-I,** p.220-227 | **Ex. 2-I,** p.1222-1228 |
| January 29, 2004 bombing of Bus No. 19 | Schecter Plaintiff | **Ex. 1-J,** p. 243-254 | **Ex. 2-J,** p.1237-1242 |
| September 24, 2004 mortar attack on Neve Dekalim | Tratner Plaintiffs | **Ex. 1-K,** p. 255-257 | **Ex. 2-K,** p.1242-1248 |

Specifically, Mr. Shaked concludes in pertinent part that:

1. For the April 30, 2003 bombing of Mike's Place, "[t]he many detailed declarations which were issued by Hamas with regard to the suicide bombing on Mike's Place, the glorification of the two suicide bombers who carried out the attack by the organization – all of these, in and of themselves, would suffice to lead to the conclusion that Hamas carried out the terrorist attack. At the same time, the video tape of the two suicide bombers leads me to conclude, with a very high degree of probability (and, indeed, I have no doubt) that Hamas was responsible for this attack". **Ex. 1-A at 202.**

2. For the September 9, 2003 bombing of Café Hillel, "[t]he many detailed declarations which were issued by Hamas with regard to the suicide bombing on Café Hillel, the

boasting about the suicide bomber who carried out the attack, Abu Salim, and his video - taped "Will" – all of these, in and of themselves, would suffice to lead to the conclusion that Hamas carried out the attack. At the same time, the ISA conclusions on the basis of its investigations, the criminal convictions of the cell members, and the video-taped declarations by Bahij Badr, in which he declared to me his pride in the performance of the suicide bombing on Café Hillel, lead me to conclude, with a very high degree of probability (and, indeed, I have no doubt) that Hamas was responsible for this attack." **Ex 1-B at 238.**

3. For the March 7, 2002 bombing at Otzem (Atzmona),"[b]ased on Hamas documents, its announcements, the memorial days for the terrorist attack, Hamas's boasting about taking responsibility, and the pictures and video films, I conclude, with a very high degree of probability (and, indeed, have no doubt) that Hamas was responsible for the suicide attack in Atzmona." **Ex 1-C at 103**.

4. For the June 11, 2003 bombing of Bus No. 14A, "[t]he many detailed declarations which were issued by Hamas with regard to the suicide bombing on the No. 14a bus, the suicide bomber's videotaped "Will," the glorification of the suicide bomber within the organization, and the profusion of praise which was given to the cell which planned and implemented the terrorist attack – all of these, in and of themselves, would suffice in order to lead to the conclusion that Hamas carried out the attack. At the same time, the ISA conclusions on the basis of its investigations, the criminal convictions of the cell members who survived, and their repeated public declarations expressing pride in the performance of the terrorist attack on the No. 14a bus and other attacks lead me to conclude, with a very high degree of probability (and, indeed, I have no doubt) that Hamas was responsible for this attack." **Ex. 1-D at 215.**

5. For the December 1, 2001 bombing of Ben Yehuda Street, "[f]rom the many Hamas documents and Israeli sources cited above, it is clear that from the command level down to the field operatives, Hamas is responsible for the double suicide bombing on Ben Yehuda Street in Jerusalem. Hamas's various publications describing the double suicide bombing on Ben Yehuda Street indicate that it glorifies the attack as a success of the *Izz al-Din al-Qassam* Brigades.  Based on the numerous documents cited above dealing with the double suicide bombing on Ben Yehuda Street in Jerusalem, I conclude, with a very high degree of probability (and indeed, I have no doubt) that Hamas was responsible for this attack."  **Ex. 1-E at 80.**

6. For the March 7, 2003 shooting at Kiryat Arba, "[t]he many detailed declarations Hamas issued with regard to the Kiryat Arba Attack, the glorification of the operatives within the organization, and the profusion of praise which was given to the cell which planned and implemented the terrorist attack – all of these, in and of themselves, would suffice to lead to the conclusion that Hamas carried out this terrorist attack.  The criminal conviction of Abdallah Abu Seif, and Hamas's repeated public declarations expressing pride in the

performance of the shooting attack in Kiryat Arba and other terrorist attacks leads me to conclude, with a very high degree of probability (and, indeed, I have no doubt) that Hamas was responsible for this attack." **Ex 1-F at 196**.

7. For the March 5, 2003 bombing of Bus No. 37, "the many detailed declarations which were issued by Hamas with regard to the suicide bombing on the No. 37 bus, the glorification of the perpetrator within the organization, and the profusion of praise which was given to the cell which planned and implemented the terrorist attack – all of these, in and of themselves, would suffice to lead to the conclusion that Hamas carried out the terrorist attack. At the same time, the ISA conclusions on the basis of its investigations, the criminal convictions of the cell members, and their repeated public declarations expressing pride in the performance of the suicide bombing on the No. 37 bus and other terrorist attacks lead me to conclude, with a very high degree of probability (and, indeed, I have no doubt) that Hamas is responsible for this attack." **Ex. 1-G at 190.**

8. For the March 27, 2002 bombing of the Park Hotel, "[t]he many detailed declarations which were issued by Hamas with regard to the suicide bombing on the Park Hotel, the boasting about the suicide bomber within the organization, and the profusion of praise which was conferred on the cell which planned and perpetrated the terrorist attack – all these, in and of themselves, would suffice to lead to the conclusion that Hamas carried out the terrorist attack. At the same time, the ISA conclusions on the basis of its investigations, the criminal convictions of the cell members, and their repeated public declarations expressing pride in the execution of the attack on the Park Hotel and other terrorist attacks – including documents in the handwriting of the cell members, describing their activity in the cell which carried out the attack – lead me to conclude with a very high degree of probability (and, indeed, I have no doubt) that this attack was carried out by Hamas." **Ex. 1-H at 135.**

9. For the August 19, 2003 bombing of Bus No. 2, "[t]he many detailed declarations which were issued by Hamas with regard to the suicide bombing on the No. 2 bus, the glorification of the operatives within the organization, and the profusion of praise which was given to the cell which planned and carried out the attack – all of these, in and of themselves, would suffice in order to lead to the conclusion that Hamas carried out the attack. At the same time, the ISA conclusions on the basis of its investigations, the criminal convictions of the cell members, and their repeated public declarations expressing pride in the performance of the terrorist attack on the No. 2 bus and other attacks leads me to conclude, with a very high degree of probability (and, indeed, I have no doubt) that Hamas was responsible for this attack." **Ex. 1-I at 227.**

10. For the January 29, 2004 bombing of Bus No. 19, "[t]he many detailed declarations which were issued by Hamas with regard to the suicide bombing on the No. 19 bus, the boasting about the suicide bomber within the organization, and the repeated public declarations in which Hamas expressed its pride in the performance of the terrorist attack on the No. 19

bus and other attacks – all of these confirm that Hamas carried out the terrorist attack. When these items of evidence are combined with the criminal convictions of Hamas cell members for their participation in the terrorist attack, I conclude, with a very high degree of probability (and, indeed have no doubt) that Hamas is responsible for this attack, and was involved in the perpetration of this terrorist attack." **Ex.1-J at 254.**

11. For the September 24, 2004 mortar attack on Neve Dekalim, "based on the assumption of responsibility by Hamas, in addition to my own experience as an expert and familiarity with the tactics adopted by the organization, as well as the video taping of the mortar fire itself, I conclude that Hamas was involved in the planning and perpetration of the mortar fire on Neve Dekalim in the Gaza Strip on September 24, 2004.  Given the available evidence for attribution, I believe that it is highly probable that Hamas was responsible for this attack, and there is no proof, to best of my knowledge, to the contrary." **Ex. 1-K at 257.**

The testimony and evidence, as presented by Mr. Shaked both in his report and at during trial, wherein he was subject to cross examination, should leave no doubt that this Court can and should find attribution for these eleven attacks to HAMAS.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Plaintiffs accordingly request that the Court, (1) review and accept the attribution testimony of Ronni Shaked, a duly qualified and admitted expert, and in accordance with his expert report filed herewith before the Court, and in reliance thereupon (2) enter findings of fact that HAMAS committed the eleven attacks which injured and/or killed the victim Plaintiffs, and each of them or their immediate family members and that (3) the Court determine and find that the Iranian Defendants are liable to the Plaintiffs, and each of them, under 28 U.S.C. § 1605A(c) for its role in sponsoring and providing material support to HAMAS. Plaintiffs further request that upon finding the Iranian Defendants liable and entering default judgment, this Court assign one or more special masters to assess the damages suffered by each of the135 individual Plaintiffs and make recommendations to the Court

regarding Plaintiffs' individual awards for their claims of damages to which they appear entitled under applicable law.

Dated: October 5, 2018                         Respectfully submitted,

                                               HEIDEMAN NUDELMAN
                                               & KALIK, P.C.
                                               1146 19th Street, N.W., 5th Floor
                                               Washington, DC 20036
                                               Telephone:  202-463-1818
                                               Telefax:  202-463-2999

                                               By:  _/s/Richard D. Heideman_____
                                                    _/s/ Tracy Reichman Kalik_____

                                                Richard D. Heideman (No. 377462)
                                                Noel J. Nudelman (No. 449969)
                                                Tracy Reichman Kalik (No. 462055)

                                               PERLES LAW FIRM, P.C
                                               Steven R. Perles (No. 326975)
                                               Edward MacAllister (No. 494558)
                                               1050 Connecticut Avenue, N.W., 10th Floor
                                               Washington, DC 20036
                                               Telephone:  202-955-9055
                                               Telefax:  202-955-3806